**STATE of Minnesota, Respondent,**

v.

**Lonnie R. STROMMEN, Appellant.**

No. C0–87–1141.

Court of Appeals of Minnesota.

Sept. 1, 1987.

Review Denied Oct. 28, 1987.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas L. Johnson, Hennepin County Atty., Vernon E. Bergstrom, Chief, Appellate Div., Minneapolis, for respondent.

Michael H. Randall, St. Paul, for appellant.

Considered and decided by POPOVICH, C.J., and FOLEY and HUSPENI, JJ., with oral argument waived.

## OPINION

HUSPENI, Judge.

On February 6, 1987, after a trial to the court, appellant Lonnie Roger Strommen was found guilty of one count of kidnapping pursuant to Minn.Stat. § 609.25, subd. 1(3), 2(2) (1986) and section 609.05 (1983); one count of kidnapping pursuant to Minn. Stat. § 609.25, subd. 1(2), 2(2) and section 609.05; one count of assault in the second degree pursuant to Minn.Stat. § 609.222 (1985) and section 609.05; one count of criminal sexual conduct in the first degree pursuant to Minn.Stat. § 609.342, subd. 1(c) (1986) and section 609.05; one count of criminal sexual conduct in the first degree pursuant to Minn.Stat. § 609.342, subd. 1(e)(ii) and section 609.05; and one count of assault in the third degree pursuant to sections 609.223 and 609.05.

Appellant was sentenced to 180 months imprisonment for kidnapping; to 36 months, concurrent, for assault in the second degree; and to 180 months, concurrent, for criminal sexual conduct in the first degree. He contends the sentence is exces-

sive and that it should be reduced to 43 months in prison, the presumptive sentence pursuant to Minnesota Sentencing Guidelines. We affirm.

### FACTS

In the early morning of August 6, 1986, appellant and two friends accepted an invitation to a party as they left a bar. The party, located at 4213 Princeton Avenue South, St. Louis Park, Minnesota, was attended by the victim T.S., then sixteen years old, a friend of the host.

At approximately 1:30 a.m. on August 6, 1986, the victim, who had consumed several cans of beer, briefly met the three men. Subsequently appellant engaged T.S. in conversation outside the residence. She then accompanied appellant to his automobile, a 1974 Buick Electra, and agreed to sit inside the car to "do Coke." It is unclear whether the men were in possession of cocaine, but T.S. never used the substance. She sat in the front seat of the vehicle next to appellant, whereupon his two friends entered the car.

Appellant immediately drove the car away from the Princeton Avenue address over the victim's objections. When she tried to escape from the vehicle, T.S. was restrained by one of the co-defendants who held a knife to her throat, choking her so she fainted for short periods, and by punching her in the face. As they drove, the co-defendants proceeded to forcibly remove the victim's clothes and to push her between the two front seats into the rear seat of the vehicle. The first co-defendant then forcibly penetrated T.S. vaginally without her consent. After this, T.S. was punched in the face several times to make her submit to oral penetration.

At some time during this incident, appellant stopped the vehicle and turned the driving over to the second co-defendant. Appellant moved to the rear seat and forced T.S. to have vaginal intercourse followed by oral sex.

Following the first four penetrations, the first co-defendant joined appellant in the rear of the car. T.S. was forced to lie on top of the first co-defendant while he had vaginal intercourse with her. Simultaneously, appellant penetrated the victim anally despite her protestations that she was being hurt.

During these sexual acts, the vehicle was driven for approximately one to two hours, until the driver reached Rice County, Minnesota. There he stopped the vehicle on a dirt road by a cornfield. The second co-defendant entered the back seat of the vehicle and had vaginal intercourse with the victim.

Afterwards, the victim was dragged from the automobile to a ditch alongside the road, forced to bend over while a co-defendant forcibly penetrated T.S. anally. Following the final sexual act, T.S. was repeatedly beaten in the face and dazed. At approximately 4:30 a.m., three hours after the kidnapping, the men left their naked victim in the ditch, injured and in a semi-conscious state, and drove away.

T.S. was afraid they would return and "try to get rid of [her] because [she] could identify them," and ran into the field to escape. Her skin was scraped by the corn as she ran. Eventually she received help from a woman in a farm house and the police were called.

The victim testified that appellant neither used the knife to frighten her nor did he beat her. However, appellant admitted he did not try to prevent the rape of T.S. by his co-defendants. He testified he did not stop the car to help the victim. Furthermore, he said he made no attempt to get help for her after she had been left in the cornfield even though he thought she may be dead or seriously injured.

As a result of the beating, T.S. had bruises and scrapes on her back, cuts on her neck, two black eyes, bleeding in her eyes and a swollen face and tongue which made it difficult for her to talk and eat for two weeks. She sustained a laceration on the right side of her face which required six to eight stitches and resulted in a permanent scar. Additionally, she suffered psychological trauma. T.S. and her mother testified the victim was afraid of being alone. She locked and barricaded the doors of the fam-

ily home when alone and carried a knife to protect herself. Furthermore, her relationship with her schoolmates was adversely affected. She told the court: "I was really upset about going to school because I knew people would stare at me and talk about [the rape] and I felt uncomfortable around my friends because I knew they were treating me differently than before." In addition, the victim's mother testified that T.S.'s school work had declined, that she had trouble sleeping, and that she was depressed. The serious and permanent nature of her injuries was not questioned by appellant.

Appellant was found guilty of six felonies. His criminal history score was zero at the time of sentencing and the presumptive sentence of the sex offense (severity level VIII) was 43 months in prison. The court determined there were severe aggravating circumstances in this case, which warranted a more than double departure. Appellant received a sentence of 180 months in prison, an upward departure almost 4.19 times the presumptive sentence of 43 months. The court did not provide written reasons to explain the upward deviation from the presumptive sentence.[1]

## ISSUE

Were there severe aggravating circumstances present which justified a durational departure of greater than double the presumptive sentence established by the Minnesota Sentencing Guidelines?

## ANALYSIS

Broad discretion is accorded the sentencing court, which will not be disturbed unless there is a "strong feeling that the sanction imposed exceeds * * * that proportional to the severity of the offense."

*State v. Titworth,* 381 N.W.2d 510, 512 (Minn.Ct.App.1986) (quoting *State v. Schantzen,* 308 N.W.2d 484, 487 (Minn. 1981)).

> A sentencing court is required to utilize the presumptive sentence provided in the sentencing guidelines unless the individual case involves substantial and compelling circumstances.

Minnesota Sentencing Guidelines II.D.; *State v. Garcia,* 302 N.W.2d 643, 647 (Minn.1981). When the trial court finds such circumstances are present, a departure from the presumptive sentence may be made.

■ The general issue before a sentencing court when it makes a decision to deviate from the presumptive sentence is whether the conduct of the defendant is "significantly more or less serious than that typically involved in the commission of the crime in question." *State v. Cox,* 343 N.W.2d 641, 643 (Minn.1984). When aggravating circumstances are present, the upward limit on a durational departure is double the maximum presumptive sentence. *State v. Evans,* 311 N.W.2d 481, 483 (Minn.1981). However, "this is not an absolute upper limit on the scope of departure because there may well be rare cases in which the facts are so unusually compelling that an even greater degree of departure will be justified." *Id. See, e.g., State v. Mesich,* 396 N.W.2d 46 (Minn.Ct.App. 1986), *pet. for rev. denied,* (Minn. Jan. 2, 1987) (the maximum sentence for criminal sexual conduct in the first degree, nearly 5.5 times the presumptive sentence, was affirmed). *See also State v. Van Gorden,* 326 N.W.2d 633 (Minn.1982) (more than triple the presumptive sentence affirmed where victim was particularly vulnerable due to her age (66) and where defendant acted with particular cruelty—injury of a

---

1. Appellant does not raise failure to provide written reasons as an issue on appeal. We nonetheless take note of the guideline requirement that such written reasons be stated. Minnesota Sentencing Guidelines II.D. and Comment II.D.03. However, because this matter was tried to the court and detailed written findings and conclusions were made to support the convictions and because the trial court's comments at the sentencing hearing referred to severe and aggravating circumstances enumerated in the transcript, we believe the holding in *State v. Martinez,* 319 N.W.2d 699 (Minn.1982), would apply. In that case, appellant complained of a failure to file a timely departure report. The supreme court held:

> the court's statements on the record at the time of sentencing adequately explained the court's reasoning.

*Id.* at 700.

serious and permanent nature inflicted, where victim was forced to submit to multiple forms of sexual penetration; defendant invaded the zone of privacy surrounding and including the victim's home; defendant dragged victim outside which heightened her fear); *State v. Norton,* 328 N.W.2d 142 (Minn.1982) (triple the presumptive sentence where victim was particularly vulnerable due to age (5) and where defendant acted with particular cruelty; victim was terrorized, put at great risk of death and suffered psychological injury); *State v. Mortland,* 399 N.W.2d 92 (Minn.1987), *pet. for reh'g denied,* (Minn. Feb. 11, 1987) (triple departure where victim was particularly vulnerable due to age (6) and defendant acted with particular cruelty; multiple penetrations, personal injury, defendant threatened to kill victim, snatched victim from close to her home, caused her serious psychological damage; in addition, a seven year old boy was traumatized through witnessing the attack upon his friend).

■ The trial court determined T.S. had been treated with particular cruelty, an aggravating factor permitting upward deviation from the presumptive sentence. Minnesota Sentencing Guidelines II.D. 2.b.(2). Additionally, the record disclosed severe aggravating factors which distinguished this case from a typical rape:

### 1. *Vulnerability of victim*

T.S., at 16, was particularly vulnerable because of her youth.

### 2. *State of mind of defendant*

According to the testimony of one defendant, a gang rape was planned after a brief meeting with the victim. T.S. testified an offer of cocaine was used to entice her to join appellant in his automobile. Appellant showed no concern for her welfare during the rape or after she was abandoned.

### 3. *Kidnap*

The victim was trapped in a vehicle with three men she had never met before. She was forcibly prevented from escaping, driven around for up to three hours and dumped in a remote cornfield at 4:30 a.m. Appellant was owner of the vehicle but made no attempt to set the victim free.

### 4. *Number of defendants*

Three men raped the victim. Appellant did not try to restrain the other two.

### 5. *Multiple penetration*

■ T.S. was subjected to multiple penetrations which "alone will generally justify a double, but not greater, upward departure" from the presumptive sentence. *State v. Mesich,* 396 N.W.2d at 52. On this basis alone, a doubling of the presumptive sentence could be affirmed. The victim in *Mesich* was raped by one man over a period of one hour, whereas T.S. was subjected to gang rape by three men over a period of one and one-half to three hours. At one point she was forcibly penetrated by two men simultaneously.

### 6. *Assault*

The victim's clothes were torn off by two of the men while one held a knife to her throat. Furthermore, she was choked until she fainted. Choking of the victim was a factor, among others, which justified a more than double departure from the presumptive sentence in *State v. Mesich,* 396 N.W.2d at 52; *State v. Herberg,* 324 N.W.2d 346, 350 (Minn.1982). Additionally, T.S. was repeatedly punched in the face to make her submit to the rapists' demands.

### 7. *State of mind of victim*

T.S. was terrorized for up to three hours after she was kidnapped, driven around, raped and beaten by three men. She was terrified they would return and kill her after they dumped her naked by a remote cornfield at 4:30 a.m. where she could have died.

### 8. *Injuries*

As a result of the actions of appellant and his co-defendants, the victim suffered psychological and permanent physical injury, a fact that was not disputed. Appellant testified he did not know if T.S. was dead or alive when the men abandoned her.

Nonetheless, appellant made no attempt to send aid to her when he left the scene or after he had time to reflect on his actions. Physical and psychological injury constitute severely aggravating factors for the purpose of sentencing. *See, e.g., State v. Mortland*, 399 N.W.2d at 95; *State v. Mesich*, 396 N.W.2d at 53.

Appellant argues he neither possessed nor used a weapon during the rape nor did he inflict physical injury on the victim. He argues, therefore, he should receive the presumptive sentence of 43 months. However, appellant admitted he never came to the victim's aid during the assault. Therefore, as a participant in the kidnapping and rape, he was legally responsible for the assault upon T.S. pursuant to Minn.Stat. § 609.05 which holds "a person * * * criminally liable for a crime committed by another if the person intentionally aids, advises, hires, counsels, or conspires with or otherwise procures the other to commit the crime." *See, e.g., State v. Campbell*, 367 N.W.2d 454 (Minn. 1985).

## DECISION

We conclude that the trial court did not err when it imposed a sentence for criminal sexual conduct in the first degree of 180 months, an upward departure of 4.19 times the presumptive sentence, pursuant to the Minnesota Sentencing Guidelines.

Affirmed.