STATE of Minnesota, Respondent,

v.

Jewell NMN HARWELL, Appellant.

No. CX–93–1656.

Court of Appeals of Minnesota.

April 19, 1994.

Review Denied June 15, 1994.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Michael Freeman, Hennepin County Atty., Linda M. Freyer, Asst. County Atty., Minneapolis, for respondent.

John M. Stuart, State Public Defender, Lyonel Norris, Asst. State Public Defender, Minneapolis, for appellant.

Considered and decided by PARKER, P.J., and HUSPENI and MULALLY,* JJ.

## OPINION

HUSPENI, Judge.

In this second degree felony murder case, appellant Jewell Harwell claims that his right to a fair trial was violated because the trial court failed to respond properly to a question the jury raised during deliberations. Appellant further challenges the double durational departure in sentencing and the amount of restitution ordered by the trial court. Because we find that the trial court properly exercised its discretion in responding to the jury's question and in imposing a 300–month term of imprisonment, but plainly erred in ordering restitution to be paid to the Missing Children's Fund, we affirm in part and reverse in part.

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by ap-

## FACTS

Erica Grothe was a fourteen-year-old runaway from rural Minnesota who found a place to live with Chandler Stephens in his South Minneapolis apartment. The two had a brief sexual relationship while living together. Appellant was Stephens' friend and frequently saw Erica at Stephens' apartment.

On the afternoon of Erica's death, she, appellant, C.H., a juvenile male also known as "Shorty," and T.A.T., a juvenile female also known as "Tay," were playing cards in a neighbor's apartment. Stephens was also present. When the neighbor told everyone that they would have to leave because she was going out, the group decided to go to Stephens' apartment. Shortly after arrival at the apartment, appellant picked up five bullets from a twin bed in the living room, and with the bullets in his hand, sat down on the bed. Appellant knew these bullets were live rounds. Tay sat next to appellant, and they started playing a game of "keep away" with the bullets. Shorty began wrestling with Erica and tossed her onto the bed, where she partially landed on top of appellant. Appellant placed his legs on top of Erica's legs while Shorty held her in a headlock.

Stephens approached the bed with an empty .357 caliber handgun and, holding it to her head, asked Erica her true age. Stephens had been told that Erica was seventeen, and when he learned that she might be much younger, he feared that he would get into trouble for having sex with her. While continuing to ask Erica her age, Stephens pulled the trigger of the empty gun twice. Erica told Stephens to stop playing with her and tried to get up, but could not move. Stephens asked appellant for a bullet. Appellant gave a bullet to Stephens, who put it in the gun, spun the cylinder, placed the gun to Erica's head and pulled the trigger again. When the gun clicked, Stephens asked appellant for another bullet. In response to Stephens' question about her age, Erica stated "I promise to God I'm only 15." Stephens

pointment pursuant to Minn.Const. art. VI, § 10.

pulled the trigger again, and the gun fired, killing Erica instantly.

Without knowing the extent of Erica's injuries, appellant and the others jumped off of the bed and ran out of the apartment. After looking for Stephens' brother at a bar but failing to locate him, appellant returned to his own home in St. Paul. Stephens called 911 from another apartment in the building and was immediately arrested when police arrived. Appellant was questioned later that evening and subsequently arrested and charged with aiding and abetting the murder of Erica Grothe.

During deliberations, the jury asked the court: "Is failure to try to prevent a crime intentionally aiding in the commission of that crime?" The trial court instructed the jury to review CRIMJIG 4.01 ("Liability for Crimes of Another"), CRIMJIG 11.13 ("Intentional Murder in the Second Degree—Elements"), and CRIMJIG 11.16 ("Murder in the Second Degree While Committing a Felony"). The jury was given a written copy of these instructions upon retiring to deliberate the verdict. The jury returned with a verdict finding appellant guilty of second degree felony murder.

## ISSUES

1. Was appellant's right to a fair trial violated when, in response to a jury question, the trial court instructed the jury to review portions of the original instructions?

2. Did the trial court abuse its discretion by sentencing appellant to double the presumptive term recommended by the sentencing guidelines?

3. Did the trial court err by ordering an award of restitution to the Missing Children's Fund?

## ANALYSIS

### I. Jury instructions

Appellant asserts that, in response to its question, the jury should have been instructed that to omit to do something is not an intentional act. He contends that the trial court's response to the jury to review por-

tions of the original instructions violated his right to a fair trial. We disagree.

A trial court has the discretion to decide whether to give additional instructions in response to a jury's question on any point of law. Minn.R.Crim.P. 26.03, subd. 19(3). The court may amplify previous instructions, reread previous instructions, or give no response at all. Id.; State v. Murphy, 380 N.W.2d 766, 772 (Minn.1986). A person may aid or abet without actively participating in the overt act, and therefore it is proper for the jury to consider a defendant's passive conduct in connection with other circumstances in determining whether a defendant intended to aid others in committing the offense. State v. Hayes, 431 N.W.2d 533, 535 (Minn.1988); State v. Parker, 282 Minn. 343, 355–56, 164 N.W.2d 633, 641 (1969).

The jury in Parker returned with almost the same question asked in this case; that is, whether a person can aid by inaction. Parker, 282 Minn. at 353, 164 N.W.2d at 639–40. In that case, the trial court reread the instruction covering aiding and abetting to the jury. The supreme court affirmed the conviction, stating that the jury's question might well have been answered in the affirmative because "inaction is often the distinguishing characteristic of the aider and abettor and is encompassed within the statute." Id. at 355, 164 N.W.2d at 641.

Here, appellant was present during the criminal activity and did nothing to stop the terror that Erica endured. Stephens' actions were not without warning. Cf. State v. Gruber, 264 N.W.2d 812, 819 (Minn.1978) (no connection between defendant's acts and perpetrator's crime where crime committed was one of sudden passion). He held a gun to Erica's head and repeatedly pulled the trigger. Furthermore, appellant handed Stephens the bullet that ultimately killed her. Because appellant's "presence and acts helped to make all the crimes possible," his lack of objection under the circumstances supports his conviction. Parker, 282 Minn. at 355, 164 N.W.2d at 641.

Additionally, appellant does not dispute that both the original instructions, copies of which the jury had during deliberations, and

counsel's closing argument adequately informed the jury that it had to find that appellant intentionally aided in the assault on Erica. *Cf. State v. Shannon,* 514 N.W.2d 790 (Minn.1994) (new trial warranted where the trial court failed to correct the jury's confusion, which was caused by conflicting statements of law in the prosecutor's closing argument and the trial court's original instructions). The jurors' verdict indicates that they resolved whatever questions they initially had. Because the original instructions provided sufficient guidance to enable the jury to resolve its concerns, the trial court's response complied with Minn.R.Crim.P. 26.-03, subd. 19(3) and was not an abuse of discretion.

■ Even if we were to find some error in the trial court's response, it would be harmless. Although something more than "mere inaction" is required to impose liability under Minn.Stat. § 609.05, *State v. Ulvinen,* 313 N.W.2d 425, 428 (Minn.1981), the court's reasoning in *Parker* is not altered where the evidence, viewed in the light most favorable to the prosecution, shows that the defendant's actions did not constitute "passive acquiescence." *In re Welfare of M.D.S.,* 345 N.W.2d 723, 734 (Minn.1984).

Appellant testified that he knew that the bullets he picked up were live rounds. When Erica was tossed down onto the bed, appellant placed his legs on top of hers, making it more difficult for her to get up. Appellant saw Stephens put the gun to Erica's head and heard him asking Erica for her true age. Appellant also heard the gun click after Stephens pulled the trigger. Furthermore, Stephens twice asked appellant for a bullet, which appellant gave him each time. Although appellant now disputes that he intentionally handed Stephens the bullets, his initial statement to police and Tay's testimony at trial indicate otherwise.

Based on the strength of the state's evidence, it is unlikely that the jury was influenced to convict appellant merely because it was instructed to reread portions of the original instructions.

## II. Durational departure in sentencing

Appellant contends that the trial court abused its discretion by sentencing him to 300 months imprisonment, a double durational departure from the presumptive guidelines sentence for second degree felony murder. We disagree.

■ An upward departure is within the sentencing court's discretion if substantial and compelling aggravating circumstances are present. *State v. Best,* 449 N.W.2d 426, 427 (Minn.1989). If the record supports a finding of substantial and compelling circumstances, this court will not interfere with the sentence "unless it has a 'strong feeling' that the sentence is disproportionate to the offense." *State v. Anderson,* 356 N.W.2d 453, 454 (Minn.App.1984) (quoting *State v. Shantzen,* 308 N.W.2d 484, 487 (Minn.1981)).

■ The trial court's sentence is supported by several factors indicating particular cruelty, which alone can justify a double departure. *See* Minn.Sent.Guidelines II. D.2.b.(2); *State v. Edwards,* 380 N.W.2d 503, 510 (Minn.App.1986). Appellant's legs were on top of Erica's while her head was held by another face down on the bed. Although she tried to get up, she could not move. She was terrorized by a gun held to her head and by the pulling of the trigger several times. Inflicting such psychological terror is particularly cruel. *See State v. Douglas,* 501 N.W.2d 694, 698 (Minn.App.1993) (double departure for felony murder justified where victim was tied face down to a bed with a blanket over his head and beaten from behind), *pet. for rev. denied* (Minn. Aug. 16, 1993); *State v. Strommen,* 411 N.W.2d 540, 544 (Minn.App.1987) (upward departure justified where victim was psychologically terrorized), *pet. for rev. denied* (Minn. Oct. 28, 1987). Although many of the acts of cruelty were those of Stephens, aiders and abettors are legally responsible for the acts of their accomplices and may be sentenced accordingly. *State v. Campbell,* 367 N.W.2d 454, 461 (Minn.1985). Furthermore, appellant left the scene without making any attempt to call police or an ambulance, even though he "didn't see any blood or anything" and "really didn't know if she was [dead or alive]" when he abandoned her. Thus, his own ac-

tions were particularly cruel. *See State v. Jones,* 328 N.W.2d 736, 738 (Minn.1983) (leaving the victim without calling for medical help is particularly cruel); *Strommen,* 411 N.W.2d at 544–45 (same).

In addition, Erica was particularly vulnerable due to her young age and due to her reduced physical capacity while appellant assisted in holding her down on the bed. *See* Minn.Sent.Guidelines II.D.2.b.(1).

### III. Payment to the Missing Children's Fund

■ The trial court ordered appellant to pay $14 (representing Erica's age) on the eighth day of each month (the day on which Erica was killed) to the Missing Children's Fund. The state urges that we not review this issue because appellant, while raising the question before this court, failed to object to the payment when it was imposed. We find no merit in the state's position. Appellant cannot waive his right to a lawful sentence. *See State v. Pieri,* 461 N.W.2d 398, 401 (Minn.App.1990); *see also* Minn.R.Crim.P. 31.02 (plain error or error affecting substantial rights may be considered on appeal despite the lack of objection or other challenge at trial).

■ Restitution may be aimed at either rehabilitation of the defendant or compensation to the victim. *See State v. Fader,* 358 N.W.2d 42, 48 (Minn.1984). Where the goal of restitution is to rehabilitate the defendant, as we suspect it was here, the amount should be set according to the defendant's ability to pay and need not appropriately compensate the victim. *Id.* Regardless of its purpose, however, only the victim is entitled to receive restitution. *See* Minn.Stat. § 611A.04, subd. 1 (1992); *Commonwealth v. Anderson,* 394 Pa.Super. 299, 575 A.2d 639, 640 (1990) (a volunteer organization such as "Crime Stoppers" is not a victim of the crime and may not receive funds by restitution from the defendant). We acknowledge our supreme court's sentiment in *Fader:*

> If the legislature intended the term (restitution) to be used more loosely, as a form of punitive damages, it should have used some other word or made its particular use of the word clearer.

*Fader,* 358 N.W.2d at 48. Because the Missing Children's Fund is not a victim of appellant's crime, it is not entitled to restitution.

Nor does the trial court have the discretion to impose a fine and direct payments to the Missing Children's Fund. *See* Minn.Stat. § 574.34 (1992) (fines not specially granted or appropriated by law "shall be paid into the treasury of the county"). We therefore vacate the portion of appellant's sentence ordering him to pay $14 per month to this Fund.

We have reviewed the issues raised in appellant's pro se supplemental brief and find them to be without merit.

### DECISION

The trial court did not abuse its discretion where, in response to a jury question, it instructed the jury to review portions of its original instructions. Aggravating factors support the trial court's decision to impose a double durational departure in sentencing. The trial court plainly erred by ordering payment to the Missing Children's Fund.

**Affirmed in part and reversed in part.**