*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1607**

State of Minnesota,
Respondent,

vs.

Bryan Blocker,
Appellant.

**Filed December 12, 2016
Affirmed in part, reversed in part, and remanded
Schellhas, Judge**

Dakota County District Court
File No. 19HA-CR-14-827

Lori Swanson, Attorney General, St. Paul, Minnesota; and

James C. Backstrom, Dakota County Attorney, Heather D. Pipenhagen, Assistant County Attorney, Hastings, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Stan Keillor, Special Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Stauber, Presiding Judge; Schellhas, Judge; and Reyes, Judge.

**U N P U B L I S H E D   O P I N I O N**

**SCHELLHAS**, Judge

Appellant challenges his conviction and sentence for kidnapping, arguing that (1) the evidence is insufficient to prove that the victim suffered great bodily harm, (2) the

evidence is insufficient to prove the existence of the eight aggravating facts found by the jury in regard to the kidnapping count, (3) the district court erred in calculating appellant's criminal-history score, and (4) the district court abused its discretion by sentencing appellant to the statutory maximum for kidnapping. We affirm in part, reverse in part, and remand.

## FACTS

The evening of March 7, 2014, H.B. went out with friends instead of going to work. H.B. did not disclose to her husband, appellant Bryan Blocker, that she had not gone to work and was concerned that he might learn her whereabouts. Blocker had put monitoring software on H.B.'s phone and often took her phone away from her. That night, Blocker repeatedly called H.B.'s phone and asked her to hurry home. At about 2:00 a.m. on March 8, H.B. told Blocker that she was not coming home and was staying at a friend's house. Blocker reacted to the news with shock because H.B. had never before refused to come home. Thinking that he could smooth over the conflict, one of H.B.'s male friends took the phone from H.B. and invited Blocker to stay the night, also. Although Blocker lived in Apple Valley and H.B. was in Burnsville, Blocker arrived within five minutes while H.B. and her friends were exiting their vehicle.

Blocker arrived with a baton and asked to speak with H.B. alone. He approached H.B. and hugged her, but she rebuffed him and told him to leave her alone. H.B.'s friend, M.G., attempted to intervene, and Blocker grabbed H.B. and struck her in the head with the baton. H.B. remembers being on the ground; her ears were ringing, a warm liquid was pouring down her face, and she could not see. While H.B. was on the ground, Blocker

2

repeatedly struck her in the head with the baton and hit her body and back. He also struck M.G. with the baton on the head and back. Blocker then picked up H.B., dragged her to his truck, and put her in the driver's seat. H.B. attempted to flee through the passenger door but had difficulty seeing because of the blood on her face and ran into something and fell.

One of H.B.'s friends attempted to scare Blocker away by firing a gun in the air, but the gun jammed. Blocker then grabbed H.B. by the roots of her hair, held her in front of his face like a shield, forced her into his truck, and left. The time was about 3:30 a.m. Blocker continued to hold H.B. by her hair and forced her head down next to his leg, almost in his lap. He removed the batteries from his phone and H.B.'s phone. Blocker stopped his truck someplace and got H.B. on the floor of the truck with her head beneath the driver's side. H.B.'s back was lying across the hump. Blocker emptied H.B.'s purse and forced a prescription bottle from her purse into her mouth, past her tongue, and down her throat. H.B. couldn't breathe and thought she would die but dislodged the pill bottle using her throat muscles and twisted away from Blocker. He next attempted to strangle H.B. with a cable or cord and his hands.

The temperature was freezing outside. Blocker took H.B.'s jacket from her, saying that because he had bought it, he did not want H.B. to wear it around other guys. He also told H.B. that "if he couldn't have [her], nobody [could]." Blocker refused to allow H.B. out of the truck to go to the bathroom, forcing her to urinate in her clothes while on the passenger-side floor of the truck. He randomly hit H.B. in the same spots on her face, telling her at one point to find the baton and that, if she did not find it in ten seconds, he would snap her neck. He then stepped on H.B.'s neck and counted down from ten. H.B.

3

thought that she was dying and asked Blocker to take her to a hospital, and he responded, "You don't seem to understand what's going on here." After many hours, Blocker asked H.B. why they got married. When H.B. said that she did not know, Blocker punched her in the nose, breaking it and causing it to bleed profusely.

Around sunrise, Blocker saw that one of H.B.'s eyes was swollen shut and tried to pry it open, causing H.B. great pain. Blocker then said, "I can't believe what I did. I'm so sorry," and told H.B. that he would drive her to a hospital. After stopping for gas, Blocker took H.B. to a Shakopee hospital and left her there. H.B. told hospital staff that Blocker had caused her injuries. H.B.'s scalp was split open in two places, requiring two sets of staples. Her right eye was swollen shut and she had two cuts between her eyes and one under her right eye that required stitches. Her tongue and lips were swollen and she had no feeling in her tongue. Her nose was broken in two places, and she had a ring-shaped bruise from the cord on her neck. Within a few days, H.B. experienced extreme neck, shoulder, and upper back pain. Her throat was sore and she could not eat solid foods for more than two weeks. The knuckle on her right index finger was smashed and pushed back and her left index finger was shattered. H.B. also had an abrasion on one of her knees.

When discharged from the hospital, H.B. was unable to walk and was almost too dizzy to sit in the wheelchair. She stayed at a friend's house for a few days because she did not want her children to see her with a black eye and blood on her face and in her hair that the hospital was unable to remove. Clumps of her hair fell out when she washed it. At home, H.B. needed help caring for herself, including feeding. She had frequent headaches and fevers for six to eight weeks and was unable to return to work until mid-May 2014. At

4

the time of Blocker's trial, H.B. still experienced headaches and memory problems, the tip of her tongue was still numb, and the shape of H.B.'s right eye and her tear duct function were changed. The assault also left her with a scar between her eyebrows. Her right knuckle is permanently pushed back and her left index finger doesn't bend on its own—it sticks out when she make a fist. H.B. is left handed and has difficulty holding a pen.

Blocker had a long history of violent and abusive behavior toward H.B. during their ten-year marriage. Blocker usually assaulted H.B. at night when they were alone in their bedroom, frequently used strangulation to hurt her, and kept a baton by the bed, often displaying it during arguments.

A jury convicted Blocker of first-degree assault (great bodily harm), two counts of second-degree assault (dangerous weapon), third-degree assault (substantial bodily harm), kidnapping to facilitate felony or flight, and domestic assault by strangulation. The jury also found that H.B. suffered great bodily harm during the course of the kidnapping. Respondent State of Minnesota moved for an upward sentencing departure, and the district court submitted a special verdict form to the jury with ten questions to find the existence of aggravating facts. The jury found that eight aggravating facts existed.

The district court concluded that the aggravating facts found by the jury constituted particular cruelty, explaining that there were "severe, substantial and compelling aggravating factors in this case," and that "in particular with the kidnapping . . . the facts found by the jury constitute particular cruelty. And those factors are severe. They're beyond anything this court has ever seen in a domestic assault." The court opined that, "This case is extreme in just about every nature. The torture that [H.B.] went through both

5

physically and mentally was so horrendous." The district court sentenced Blocker to concurrent sentences of 132 months' imprisonment for first-degree assault, 54 months' imprisonment for second-degree assault, 32 months' imprisonment for domestic assault by strangulation, and the statutory maximum of 480 months' imprisonment for kidnapping.

This appeal follows.

## DECISION

## I.

Blocker concedes that H.B. suffered great bodily harm but argues the evidence is insufficient to prove that he inflicted the great bodily harm during the course of the kidnapping. Blocker argues that he inflicted great bodily harm on H.B. *before* she entered his truck and that the kidnapping did not occur until *after* H.B. entered his truck.

### Great bodily harm during kidnapping

#### *When kidnapping occurred*

Kidnapping requires (1) confinement or removal of another person from one place to another, (2) without that person's consent, and (3) for one of four enumerated purposes, including to commit great bodily harm or terrorize the victim. Minn. Stat. § 609.25, subd. 1 (2012). Confinement means, "The act of imprisoning or restraining someone; the quality, state, or condition of being imprisoned or restrained." *Black's Law Dictionary* 362 (10th ed. 2014). "[C]onfinement or removal must be criminally significant in the sense of being more than merely incidental to the underlying crime, in order to justify a separate criminal sentence." *State v. Earl*, 702 N.W.2d 711, 722 (Minn. 2005) (quotation omitted). "In Minnesota, there is no requirement that the person be detained for a 'substantial' period of

time or transported a 'substantial' distance." *State v. Budreau*, 641 N.W.2d 919, 929 (Minn. 2002).

A court may sentence a defendant for a kidnapping conviction in one of two ways under Minn. Stat. § 609.25, subd. 2 (2012). "[I]f the victim is released in a safe place *without* great bodily harm" imprisonment is limited to 20 years. Minn. Stat. § 609.25, subd. 2(1) (emphasis added). "[I]f the victim is not released in a safe place, *or* if the victim *suffers great bodily harm during the course of the kidnapping*" a court may sentence a defendant for kidnapping to 40 years of imprisonment. *Id.*, subd. 2(2) (emphasis added). Great bodily harm is "bodily injury which creates a high probability of death, or which causes serious permanent disfigurement, or which causes a permanent or protracted loss or impairment of the function of any bodily member or organ or other serious bodily harm." Minn. Stat. § 609.02, subd. 8 (2012).

Relying on *State v. Smith*, Blocker argues that any confinement of H.B. before she entered the truck was merely incidental to his assault of her and therefore not criminally significant. 669 N.W.2d 19, 32 (Minn. 2003), *overruled on other grounds by State v. Leake*, 699 N.W.2d 312 (Minn. 2005). In *Smith*, the court held that momentarily blocking a doorway during an assault leading to a murder that was already underway was not criminally significant. *Id.* at 23, 32. But the facts in *Smith* are easily distinguished from the facts in this case, which are more like the facts in *State v. Earl*.

In *Earl*, the supreme court held that although removing a family to the kitchen and binding the victims with electrical tape while the house was burglarized "may have been necessary to commit the burglary, it was not merely incidental" to the burglary but was

7

"purposeful behavior in its own right . . . distinct from the burglary." 702 N.W.2d at 723. We similarly conclude that Blocker's confinement of H.B. during his assault outside his truck was criminally significant in its own right and distinct from the assault. He approached H.B. and her friends and stated that he wanted to speak to H.B. alone, hugged her and pulled on her, restraining her even after H.B. asked him to leave her alone. He restrained H.B. because she did not wish to be with him, and then he assaulted her. When viewed in the light most favorable to the verdict, the record evidence supports a reasonable jury's finding that H.B.'s confinement or removal was criminally significant during the assault outside the truck. We conclude that Blocker has not met his heavy burden of proving that no jury could reasonably find beyond a reasonable doubt that his kidnapping of H.B. occurred when he restrained her against her will before she entered the truck.

*Sufficiency of great-bodily-harm evidence while in truck*

In addition to arguing that he did not kidnap H.B. until she entered his truck, Blocker argues that the evidence is insufficient to prove that he inflicted great bodily harm on H.B. while she was in the truck—during Blocker's acknowledged kidnapping. And Blocker asserts that we should apply a circumstantial-evidence standard to our review of the evidence, arguing that no direct evidence proves the infliction of great bodily harm while H.B. was in the truck. We disagree.

"Direct evidence is [e]vidence that is based on personal knowledge or observation and that, if true, proves a fact without inference or presumption." *Bernhardt v. State*, 684 N.W.2d 465, 477 n.11 (Minn. 2004) (quotations omitted). H.B.'s testimony about Blocker's assault of her while she was held in his truck against her will and her resulting

8

injuries was direct evidence of the great bodily harm that she sustained in the truck. *See State v. Williams*, 337 N.W.2d 387, 389 (Minn. 1983) (noting that the testimony of a person who perceived a fact through her senses or physical evidence of the fact itself is direct evidence); *see also State v. Horst*, 880 N.W.2d 24, 40 (Minn. 2016) (observing that state proved each of disputed elements through witness testimony, which is direct evidence when it reflects witnesses' personal observations and allows jury to find defendant guilty without having to draw any inferences).

"Under the traditional standard, [appellate courts] limit [their] review to a painstaking analysis of the record to determine whether the evidence, when viewed in a light most favorable to the conviction, was sufficient to permit the jurors to reach the verdict which they did." *Horst*, 880 N.W.2d at 40 (quotation omitted). Appellate courts "assum[e] that the fact-finder disbelieved any evidence that conflicted with the verdict." *State v. Barshaw*, 879 N.W.2d 356, 363 (Minn. 2016). Appellate courts will not disturb a jury verdict "if the jury, acting with due regard for the presumption of innocence and for the necessity of overcoming it by proof beyond a reasonable doubt, could reasonably conclude [the] defendant was proven guilty of the offense charged." *Bernhardt*, 684 N.W.2d at 476–77. "A defendant bears a heavy burden to overturn a jury verdict." *State v. Vick*, 632 N.W.2d 676, 690 (Minn. 2001).

During Blocker's kidnapping of H.B. in the truck, he forced a pill bottle down H.B.'s throat so that she could not breathe; struck her repeatedly in the face; attempted to strangle her with a cable or cord and his hands; and broke her nose. We conclude that the jury could reasonably find that H.B. suffered a high probability of death during the

9

kidnapping and assault by Blocker, particularly in her weakened state after the assault outside the truck.

The jury could reasonably conclude that great bodily harm occurred during the course of the kidnapping in the truck if the jury found that H.B. suffered a high probability of death, serious permanent disfigurement, permanent or protracted loss or impairment of any bodily member, or other serious bodily harm while in the truck. *See* Minn. Stat. § 609.02, subd. 8. Under *State v. Dye*, we must "focus on the injury to the victim rather than the actions of the assailant." 871 N.W.2d 916, 922 (Minn. App. 2015). When viewed in a light most favorable to the conviction, we conclude that the evidence was sufficient to permit the jury to reasonably conclude that H.B. suffered great bodily harm during the kidnapping in the truck.

## II.

The state gave Blocker notice of an intent to seek an aggravated sentence on March 28, 2014, based on particular cruelty. *See* Minn. Sent. Guidelines 2.D.3.b.(2) (2014). At a hearing to determine if there were aggravating facts to support an upward departure, the district court submitted ten questions to the jury. "[A]ny *fact* (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a . . . guilty verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *State v. Rourke*, 773 N.W.2d 913, 919 (Minn. 2009) (citing *Blakely v. Washington*, 542 U.S. 296, 301, 303–04, 124 S. Ct. 2531, 2537 (2004)). Any aggravating factor can be used as the basis for an upward sentencing departure. *State v. Fleming*, 883 N.W.2d 790, 797 (Minn. 2016). "[T]he

10

Minnesota Rules of Evidence apply in jury sentencing trials." *State v. Rodriguez*, 754 N.W.2d 672, 684 (Minn. 2008). We conduct the same review of the sufficiency of the evidence in a jury sentencing trial as we do in any other criminal trial. We undertake a painstaking review of the record to determine whether a fact-finder could reasonably find the existence of an aggravating fact submitted to the fact-finder for its consideration. *See Barshaw*, 879 N.W.2d at 362. We review "the evidence presented in the light most favorable to the verdict, and assum[e] that the fact-finder disbelieved any evidence that conflicted with the verdict." *Id.* at 363. "A defendant bears a heavy burden to overturn a jury verdict." *Vick*, 632 N.W.2d at 690. We will not disturb the jury's verdict if the jury, acting with due regard for the requirement of proof beyond a reasonable doubt, could reasonably find the existence of the aggravating fact. *See Bernhardt*, 684 N.W.2d at 476–77.

Here, the jury found that the following eight aggravating facts were proved beyond a reasonable doubt:

> (1) Blocker grabbed H.B.'s hair after he caused an injury to her head with the [baton]; (2) Blocker used a pill bottle on [H.B.] as a form of strangulation; (3) Blocker counted down from ten while H.B. looked for the [baton]; (4) Blocker randomly struck H.B. as his anger increased and decreased; (5) H.B.'s belief that she would die for nearly six hours; (6) H.B. was held in an isolated location for nearly six hours; (7) Blocker did not let H.B. leave the truck to urinate, forcing her to urinate on herself; (8) Blocker made H.B. lie/sit on the floor of the truck in her own blood and wet clothing for almost six hours.

Blocker attempts to assign error to the district court for its reliance on these aggravating facts on various bases, including insufficiency of the evidence. We will attempt to address Blocker's arguments.

*(1) Blocker grabbed H.B.'s hair after he injured her head with the [baton]*

Blocker concedes that the state proved this fact but argues that the conduct did not happen in the course of the kidnapping because it took place before H.B. was confined in the truck. Blocker's argument is irrelevant to the jury's finding about the existence of this aggravating fact. Even if it is somehow relevant, we conclude that the evidence was sufficient for the jury to find beyond a reasonable doubt that Blocker grabbed H.B.'s hair during the course of the kidnapping, whether that occurred before H.B. got into Blocker's truck, after she got into Blocker's truck, or both.

*(2) Blocker used a pill bottle on [H.B.] as a form of strangulation*

Relying on *State v. Spaeth*, Blocker argues that this fact cannot support a departure on kidnapping because Blocker was charged and convicted of domestic assault by strangulation. 552 N.W.2d 187, 196 (Minn. 1996). We disagree. In *State v. Edwards*, the supreme court rejected this argument based on *Spaeth* by clarifying that "*Spaeth* do[es] not prohibit the district court from using 'overlapping' facts to depart upward when a defendant is convicted of multiple offenses arising out of a single behavioral incident, if those facts show that the defendant committed the offense being sentenced in a particularly serious way." 774 N.W.2d 596, 604 (Minn. 2009). And in *State v. Fleming*, the supreme court further clarified that *any* aggravating factor can be used as the basis for an upward sentencing departure, as follows:

> We conclude that under Minn. Stat. § 244.10, subd. 5a(b), an aggravating factor is conduct that renders the sentenced offense significantly more serious than typically involved in the commission of the sentenced offense. The statute allows a court to base an upward sentencing departure on *any* aggravating factor, even if the aggravating factor relates, or arises in connection with another offense committed during the same course of conduct.

883 N.W.2d at 797. Blocker's argument therefore fails.

*(3) Blocker counted down from ten while H.B. looked for the [baton]; (4) Blocker randomly struck H.B. as his anger increased and decreased; and (5) H.B.'s belief that she would die for nearly six hours*

Blocker challenges these facts on the basis that they "significantly overlap." He concedes that he counted down from ten while making her look for the baton, that he struck her, and that H.B. feared for her life, but argues that these facts are not distinct facts because they all relate to H.B.'s fear. Blocker cites no authority to support his argument. Because *Fleming* clearly allows a court to base an upward departure on *any* aggravating factor, even if it arises in connection with another offense committed during the same course of conduct, Blocker's argument fails. *Id.*

*(6) H.B. was held in an isolated location for nearly six hours*

Relying on *State v. Strommen*, Blocker argues that H.B. was not kept in an isolated location because she testified that she could see a road, headlights through the trees, and a pole barn with a business sign on it. 411 N.W.2d 540 (Minn. App. 1987), *review denied* (Minn. Oct. 28, 1987). In *Strommen*, the victim was left naked in a ditch by a cornfield after a kidnapping and sexual assault. *Id.* at 544. But Blocker's reliance on *Strommen* is misguided because the *Strommen* court did not discuss the meaning of "an isolated

13

location," it merely mentioned where the victim was left at the conclusion of the kidnapping. Here, the facts in the record are sufficient for a jury to find that H.B. was in an isolated location because the truck was parked in a long driveway that led to a pole barn and woods, H.B. could not escape and get to the road, and police were unable to find her. Moreover, H.B. clearly was isolated in the truck.[1]

We conclude that the evidence was sufficient to sustain the jury's finding that all eight aggravating facts were proved beyond a reasonable doubt.

**III.**

Blocker argues that the district court abused its discretion by using a criminal-history score of five to calculate his presumptive guidelines sentence for kidnapping. "Interpretation of the sentencing guidelines is a legal question that [this court] review[s] de novo." *State v. Campbell*, 814 N.W.2d 1, 6 (Minn. 2012). "We review the district court's determination of a defendant's criminal-history score for an abuse of discretion." *State v. Drljic*, 876 N.W.2d 350, 353 (Minn. App. 2016) (citing *State v. Stillday*, 646 N.W.2d 557, 561 (Minn. App. 2002), *review denied* (Minn. Aug. 20, 2002)). Blocker argues that the court should have used a criminal-history score of three. The state concedes that the district court erred by using Blocker's first-degree-assault conviction to increase his criminal-history score. We agree.

---

[1] Blocker also argues in error that the jury found that the state had proved that Blocker grabbed H.B.'s hand and acted as if he was going to rip each nail off of her hands. But the jury did not find that this fact was proved beyond a reasonable doubt and checked "no" for that question on the special verdict form, so it is not necessary to address his argument on this fact.

The 2014 Minnesota Sentencing Guidelines provide that:

> When multiple current convictions arise from a single course of conduct and multiple sentences are imposed on the same day under Minn. Stats. §§ 152.137, 609.585, or 609.251, the conviction and sentence for the "earlier" offense does not increase the criminal history score for the "later" offense.

Minn. Sent. Guidelines 2.B.1.e.(1) (2014). The district court calculated Blocker's criminal-history score as a five based upon two points for the first-degree-great-bodily-harm-assault conviction (victim H.B.) and one and one-half points based on the second-degree-dangerous-weapon-assault conviction (victim M.G.). The court erred by including the first-degree-great-bodily-harm-assault conviction (victim H.B.) to increase Blocker's criminal-history score for the kidnapping conviction because the Sentencing Guidelines prohibit using "the conviction and sentence for the earlier offense [to] increase the criminal history score for the later offense."[2] *Id.* (quotations omitted). We therefore remand to the district court for a correction of Blocker's criminal-history score and recalculation of his presumptive guidelines sentence for kidnapping.

## IV.

Blocker argues that the district court abused its discretion by sentencing him to 480 months, the statutory maximum sentence for kidnapping. The district court sentenced Blocker to the statutory maximum of 480 months, after determining his presumptive guidelines sentence to be 125–175 months based upon a criminal-history score of five and

---

[2] Blocker does not challenge the district court's use of the second-degree-dangerous-weapon-assault conviction related to a separate victim, M.G., to increase his criminal-history score.

an offense severity level of nine. The court therefore imposed an upward durational departure that is approximately 2.74 times the presumptive sentence. The presumptive sentence for a criminal-history score of three with a severity level of nine is 104–146 months, which makes the departure approximately 3.28 times the presumptive sentence, a more than triple upward departure. Minn. Sent. Guidelines 4.A (2014). Blocker concedes that the district court has grounds to depart from the presumptive guidelines sentence but argues that the aggravating factors do not support a finding of severe aggravating circumstances necessary to support a departure of more than double the presumptive sentence.

"Generally, [appellate courts] review an upward departure from the presumptive guidelines sentence for an abuse of discretion." *Tucker v. State*, 799 N.W.2d 583, 585−86 (Minn. 2011). "An upward departure will be reversed if the sentencing court's articulated reasons for the departure are improper or inadequate and the evidence in the record is insufficient to justify the departure. *Id.* at 586 (quotation omitted). "[F]or the district court to impose a greater-than-double-durational sentence, there must be severe aggravating factors." *State v. Stanke*, 764 N.W.2d 824, 828 (Minn. 2009). "[I]n such cases the only absolute limit on duration is the maximum provided in the statute defining the offense." *State v. Shattuck*, 704 N.W.2d 131, 140 (Minn. 2005). "There remains 'no easy-to-apply test' of severity" and "the inquiry [into severity] is unstructured." *Dillon v. State*, 781 N.W.2d 588, 597 (Minn. App. 2010), *review denied* (Minn. July 20, 2010). The outcome of the inquiry can depend on many factors, including,

> the extent of a victim's vulnerability, the shocking nature of a victim's degradation, the permanence of the victim's injury, the number of separate attacks on the same victim, the concealment of a victim's body, the presence of multiple aggravating factors, or the exposure of the victim to an incurable disease.

*Id.* But "there is no clear line that marks the boundary between 'aggravating circumstances' justifying a double departure and 'severe aggravating circumstances' justifying a greater than double departure." *State v. Norton*, 328 N.W.2d 142, 146 (Minn. 1982). In light of our remand for a redetermination of Blocker's criminal-history score, we also remand for the district court to reconsider Blocker's sentence for his kidnapping conviction.

**Affirmed in part, reversed in part, and remanded.**