STATE of Minnesota, Respondent,

v.

Peter James MURR, Appellant.

No. C8–88–2323.

Court of Appeals of Minnesota.

Aug. 1, 1989.

Review Denied Sept. 27, 1989.

Hubert H. Humphrey, III, Atty. Gen., Thomas Foley, Ramsey County Atty., Darrell C. Hill, Asst. Ramsey County Atty., St. Paul, for respondent.

C. Paul Jones, State Public Defender, Bradford Colbert, Asst. State Public Defender, St. Paul, for appellant.

Considered and decided by NIERENGARTEN, P.J., and LANSING and SCHUMACHER, JJ., without oral argument.

## OPINION

LANSING, Judge.

Peter Murr appeals his conviction for the second degree intentional murder of his father, Theodore Murr. Murr contends that erroneous admission of physical evidence and a custodial statement require a new trial. In the alternative, Murr requests reduction of his 288–month sentence to the presumptive term of 256 months.

## FACTS

In October 1987 36–year–old Peter Murr moved to St. Paul to live with his father, Theodore Murr, and his younger sister, Lilly Murr. Late in October Murr was charged in Dakota County with receiving stolen property and unauthorized use of a motor vehicle. In January Murr damaged his father's car in an accident.

Because of these incidents Theodore Murr's daughter, Joyce Peltier, called her father about 9:20 p.m. on January 14th to suggest that he ask Murr to move out. He told her that he was talking to Murr at that moment and would tell her about it at lunch the next day. About 20 minutes later Lilly Murr came home and observed her father and Murr talking. Her father told her that they were having a private conversation and Lilly Murr went to her room.

At approximately 10:30 p.m. Lilly Murr heard her father and brother arguing and then heard a loud thud. She heard someone go into the bathroom twice, leaving the exhaust fan running. She also heard someone walk into her father's bedroom and then heard the opening of closet doors where Murr kept his knapsack and sleeping bag.

When Lilly Murr woke up the next morning, the bathroom fan was still running. She left for work without seeing either her father or Murr. Her father did not meet Peltier for lunch and neither Peltier nor Lilly Murr were able to reach him by phone. At 4:30 p.m. Lilly Murr and Peltier met at Theodore Murr's condominium, neither their father nor brother were there and their father's car was gone. His shoes, winter coats, and glasses were still there, but the linens from his bed were missing. Peter Murr's knapsack and sleeping bag were gone, as was their father's shotgun and some money from his desk. The sisters notified the police.

On January 27, 1988, Peter Murr was arrested in Curry County, Oregon, pursuant to a bench warrant issued on the Dakota County charges. The warrant was based on Murr's disappearance which suggested that he would not make future court appearances.

At the time of the arrest Murr was in possession of Theodore Murr's shotgun, his car, and both sets of car keys. Searches of the car and Murr's personal property pursuant to separate search warrants revealed bloodstains that were inconsistent with Murr's blood type and consistent with Theodore Murr's.

In early March 1988 a body was discovered in a shallow grave in Death Valley National Park, California. The body had been partially mutilated by coyotes but was identified through dental records as the body of Theodore Murr. The body was wrapped in the bedspread from Theodore Murr's home in St. Paul. The cause of death was determined to be a massive cerebral contusion due to a blunt trauma to the head, and death was estimated to have occurred between five and ten weeks prior to the discovery of the body.

After a jury trial, Murr was convicted of second degree intentional murder and sentenced to an executed term of 288 months. Murr appeals both his conviction and his sentence.

## ISSUES

1. Was appellant entitled to suppression of physical evidence seized after his arrest?

2. Did the trial court err in admitting appellant's statement, which was made during a routine booking procedure but after Murr had invoked his right to counsel?

3. Did the trial court abuse its discretion in imposing a 32–month upward durational departure?

ANALYSIS

I.

Prior to the death of his father, Murr had been charged on October 26, 1987 with receiving stolen property and unauthorized use of a motor vehicle, both felonies. The court determined that sufficient probable cause existed to support the complaint and issued a summons. On December 28, 1987, Murr was ordered to undergo examination to determine his competency to stand trial on those charges and his pretrial release was continued on the recognizance of his attorney.

Approximately three weeks later—one week after Peter and Theodore Murr disappeared—the Dakota County prosecutor moved for an order directing that a warrant be issued for Murr's arrest. The prosecutor's accompanying affidavit stated that he had been informed by a deputy sheriff that Peter Murr might have fled the jurisdiction and might have caused harm to another, and that the prosecutor had reason to believe that Murr would not make his future court appearances.

Contrary to Murr's assertion, the issue for review is not whether the affidavit accompanying the bench warrant contained probable cause to arrest. Probable cause to arrest or to otherwise insure Murr's appearance in court was established when the summons was issued. Although Minn. R.Crim.P. 11.03 (1988) allows a defendant to bring a motion alleging insufficient probable cause to support a complaint, Murr apparently did not bring such a motion or otherwise contest the probable cause determination.

■ The only right implicated by the issuance of the Dakota County bench warrant is Murr's right to pretrial release. *See* Minn.R.Crim.P. 6.02, subd. 1 (1988). That right may be revoked "upon an application of the prosecuting attorney alleging that a defendant has violated the conditions of his release." Minn.R.Crim.P. 6.03, subd. 1 (1988). The court may then issue a warrant for the defendant's arrest if it

reasonably appears that there is a substantial likelihood that the defendant will fail to respond to the summons *or* when the whereabouts of the defendant is unknown.

*Id.* (emphasis added).

Although our review is hampered by the parties' failure to provide us with documentation of the complete terms of Murr's release on the Dakota County charges, it is clear that he was released to the recognizance of his attorney. It is also clear that there was some question as to his competency to stand trial.

The statements in the prosecuting attorney's affidavit provide a reasonable basis for the court to conclude that Murr's whereabouts were unknown, and therefor the warrant was properly issued in compliance with the requirements of Minn.R. Crim.P. 6.03, subd. 1. Because Murr was arrested pursuant to a valid bench warrant, the evidence is not inadmissible as the product of an illegal arrest. Additionally, we note that the evidence was seized in searches conducted pursuant to valid search warrants. These warrants were obtained by the FBI based on information supplied by Lilly Murr, rather than on facts surrounding Murr's arrest. Murr does not contest the validity of these warrants, and we conclude the evidence was properly admitted.

II.

■ After his arrest, Murr invoked his right to counsel before he was booked and placed in the Curry County jail. Approximately two weeks later he was transferred to the Lane County (Oregon) jail so that a blood sample could be obtained before he was returned to Minnesota. During the booking process Murr named his brother Robert as next-of-kin.

This statement was admitted at trial, with evidence that Murr had identified his father as next-of-kin in October 1987. Murr argues that the statement should have been suppressed because it resulted

from improper custodial interrogation that police should have known would likely produce an incriminating response.

Police-initiated custodial interrogation after a defendant invokes a right to counsel violates the defendant's fifth amendment right against self-incrimination. *Edwards v. Arizona,* 451 U.S. 477, 484–85, 101 S.Ct. 1880, 1884–85, 68 L.Ed.2d 378 (1981); *State v. Robinson,* 427 N.W.2d 217, 222 (Minn. 1988). "Interrogation" is defined as

> any words or actions on the part of the police (*other than those normally attendant to arrest and custody*) that the police should know are reasonably likely to elicit an incriminating response.

*Rhode Island v. Innis,* 446 U.S. 291, 301, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297 (1980) (emphasis added). Minnesota cases are in accord. *See State v. Widell,* 258 N.W.2d 795, 797 (Minn.1977) ("*Miranda* warnings need not be given before asking routine booking questions"); *State v. Link,* 289 N.W.2d 102, 107 (Minn.1979) ("[b]iographical questions are not proscribed by *Miranda* ").

■ Because Murr's statement was made in response to a routine booking question, it was not the result of improper custodial interrogation. Although Murr argues that the question was improper because he was the prime suspect in his father's disappearance, and the question was "reasonably likely to elicit an incriminating response," any error in admitting Murr's statement will not require reversal if the error was harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967); *State v. Warndahl,* 436 N.W.2d 770, 776 (Minn.1989).

The victim's family testified that Murr and his father were arguing on the evening of January 14th and that a "thud" was heard. The next day the victim disappeared, failing to appear for a scheduled lunch with his daughter and leaving all his belongings behind. The victim's bed linens were also missing, as were Murr and his belongings and the victim's car.

When Murr was apprehended in Oregon he was in possession of the victim's car, both sets of car keys, and the victim's shotgun. Bloodstains consistent with the victim's blood type and inconsistent with Murr's were found in the car's trunk and on articles of Murr's clothing. The victim's body, when recovered, was wrapped in the bedspread missing from his home.

This evidence amply supports our conclusion that any error in admitting Murr's statement was harmless beyond a reasonable doubt.

### III.

■ The trial court cited Murr's concealment of his father's body and the resulting trauma to the family as aggravating factors to justify a 32 month upward departure. Murr argues that the concealment alone does not justify the departure and requests that his sentence be reduced to the presumptive term of 256 months.

■ The trial court may depart from the presumptive sentence only if the case involves "substantial and compelling circumstances." Minnesota Sentencing Guidelines II.D. The trial court's determination will not be disturbed on appeal absent a clear abuse of discretion. *State v. Garcia,* 302 N.W.2d 643, 647 (Minn.1981).

Concealment of the victim's body was first recognized as an aggravating factor in *State v. Ming Sen Shiue,* 326 N.W.2d 648 (Minn.1982). In that case, a sentence 3.4 times the presumptive sentence was upheld, and the court observed that

> [t]he victim's body was affirmatively concealed by the defendant. * * * It was difficult to observe. * * *
>
> The inclusion of concealment as an aggravating factor is justified *not only* by the trauma to close relatives, but by independent policy reasons. * * * [The defendant] was able to use the concern of the [victim's] parents and the authorities * * *. He negotiated an agreement to disclose the whereabouts of the body in exchange for an agreement to forgo prosecution for first degree murder.

*Id.* at 655 (emphasis added).

There is some merit to Murr's position that concealment alone may not support an

aggravated sentence. *See State v. Schmit,* 329 N.W.2d 56, 58 n. 1 (Minn.1983) ("Because defendant made no effort to bargain with information concerning the location of the body, his concealment of the body does not operate as an aggravating factor in sentencing").

However, the method of concealment and the indication of particular cruelty may still be considered. Murr concealed his father's body by burying it in an isolated area. Identification of the body could be accomplished only through dental records; no other items of identification were present. *See State v. Jackson,* 370 N.W.2d 72, 74 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. Aug. 20, 1985) (concealment of the body, coupled with other attempts at concealing the victim's identification, support aggravation of sentence).

Murr's transportation of his father's body in the trunk of his car, combined with the manner of concealment of the body that lead to its mutilation by coyotes, relate to the "particular cruelty" with which the murder was committed. *See State v. Johnston,* 390 N.W.2d 451, 456–57 (Minn.Ct. App.1986), *pet. for rev. denied* (Minn. Aug. 27, 1986) (although bargaining was not attempted, disposal of the body in a dumpster related to the "particular cruelty" with which the murder was committed).

Finally, it caused Theodore Murr's family great anguish to be without knowledge of his whereabouts for more than seven weeks. For these reasons, and in light of the limited departure imposed, we conclude that the trial court did not abuse its discretion in sentencing Murr.

## DECISION

We affirm the conviction for second degree intentional murder and the limited upward durational departure from the sentencing guidelines.