**STATE of Minnesota, Respondent,**

v.

**Randy Dale FOLKERS, Appellant.**

No. C9–96–1338.

Court of Appeals of Minnesota.

April 8, 1997.

Review Granted July 10, 1997.

Hubert H. Humphrey, III, Attorney General, St. Paul, for respondent.

James C. Backstrom, Dakota County Attorney, Scott A. Hersey, Assistant County Attorney, Hastings, for respondent.

Barry V. Voss, Voss & Hickman, Minneapolis, for appellant.

Considered and decided by AMUNDSON, P.J., and SHORT, and HARTEN, JJ.

## OPINION

SHORT, Judge.

A jury convicted Randy Dale Folkers of second-degree intentional murder in violation of Minn.Stat. § 609.19(1) (1996) and second-degree felony murder in violation of Minn. Stat. § 609.12(2) (1996) in the shooting death of Alicia Srozinski. The primary witness against Folkers, and the only eyewitness to the shooting, was Joshua Ploog, who testified in exchange for the state's agreement to charge Ploog only with aiding an offender. The trial court sentenced Folkers to 360 months, which constituted a 17 percent upward durational departure from the presumptive guidelines sentence. Folkers appeals from the judgment of conviction and sentence.

## FACTS

Folkers had a two-year extra-marital relationship with Alicia Srozinski (the victim). On Tuesday evening, September 19, 1995, the victim met Folkers and other friends at a Minneapolis bar, where they remained until closing time. When the victim did not return home by the next morning, her roommate unsuccessfully tried to locate her at home, at work, and through Folkers. Folkers informed the roommate and police that he had had drinks with the victim until closing time and paid her money he owed her, but the two had gone their separate ways home.

On Friday, September 22, St. Paul police discovered the victim's van in a parking lot in South St. Paul. The victim's body was in the back of the van, covered by a pile of blankets. Although Folkers initially claimed he had last seen the victim at the bar, he changed his position when another friend, Patrick Hart, informed police that he had accompanied Ploog, Folkers, and the victim to Folkers's garage after the bar closed. At trial, Hart testified that once they arrived at Folkers's garage: (1) Folkers and the victim started arguing over money; (2) Hart gave Folkers $200 to pay to the victim because she was concerned Folkers's check might bounce; and (3) Hart parted company with the others because of the angry mood in the garage.

Initially, Ploog told police that he and Folkers had not seen the victim after leaving the bar. However, after negotiating an agreement with the prosecution, Ploog testified: (1) at Folkers's garage, the victim demanded that Ploog and Folkers collect a debt for her; (2) both men refused, but Folkers offered to pay the victim; (3) Folkers handed Ploog a checkbook to write a $200 check; (4) the victim was "[p]retty hysterical," and threw the checkbook on the floor; (5) the victim threatened to tell Folkers's wife about their affair; (6) Folkers retrieved a revolver from a drawer in the workbench, turned the cylinder, and pointed it at the victim; (7) Ploog asked Folkers what he was doing with the gun, and Folkers said he intended to scare the victim; (8) Ploog heard the gun click, but the victim continued to yell at Folkers; (9) Folkers pulled the trigger a second time, the gun fired, and the victim

collapsed to the floor; (10) Folkers told Ploog he did not mean to shoot the victim and thought the gun had two or three empty chambers; (11) Ploog helped Folkers conceal the crime, first by helping to park the victim's van in Robbinsdale for the night, then by retrieving the van, putting the victim's body in it, and driving it to South St. Paul; and (12) Folkers threw the gun in the Mississippi River on their return home from South St. Paul.

By contrast, Folkers testified: (1) he had initially lied about his contact with the victim on the night of the shooting to protect his family; (2) the gun had to be cocked each time before firing; (3) Ploog had previously fired Folkers's gun accidentally; (4) Folkers's wife was already aware of his affair with the victim; (5) Folkers had gone to urinate in the paint booth on the evening of the shooting, and while in the booth he heard a gunshot; (6) when he left the booth, he observed the victim dead on the floor; and (7) Ploog told him the shooting was an accident.

During the defense's case-in-chief, defense counsel asked an investigating officer about Ploog's agreement with the prosecution. When the officer responded that he was not familiar with the agreement, defense counsel showed the officer a copy of the prosecution's letter to Ploog to refresh his recollection. On redirect, the prosecutor asked that the letter be marked as an exhibit. Defense counsel objected to admission of the letter on grounds that it constituted "vouching" evidence, because the agreement required Ploog's truthful testimony. The trial court admitted the letter over objection because the defense itself had raised the issue of Ploog's agreement.

The state also moved to introduce evidence that Folkers physically abused the victim during their relationship. The trial court permitted two co-workers to testify about the bruises and bite marks they saw on the victim, and allowed one of them to testify she had seen Folkers assault the victim on three occasions. However, the trial court excluded various hearsay statements of the victim's fear of Folkers, and ruled the testimony of the victim's roommate regarding the history of the relationship was cumulative and inadmissible.

## ISSUES

I. Did the trial court abuse its discretion in admitting the prosecution letter and evidence of Folkers's prior abuse of the victim?

II. Was the evidence sufficient to support Folkers's conviction?

III. Did the trial court abuse its discretion in imposing an upward departure from the presumptive guidelines sentence?

## ANALYSIS

### I.

Rulings on evidentiary matters rest within the sound discretion of the trial court and will not be reversed absent an abuse of that discretion. *State v. Naylor*, 474 N.W.2d 314, 317 (Minn.1991).

#### A. Prosecution Letter

■ Folkers argues the trial court abused its discretion in admitting a copy of a letter setting out an agreement between Ploog's attorney and the prosecution, calling for Ploog to be charged with a lesser offense in exchange for his truthful information and testimony. Generally, offers to plead guilty and related statements are inadmissible in trial. Minn.R.Evid. 410. However, by questioning the investigating officer about Ploog's bargain with the prosecutor, Folkers opened the door to admission of the substance of that agreement. *See State v. DeZeler*, 230 Minn. 39, 45, 41 N.W.2d 313, 318 (1950) (holding "[w]here one party introduces inadmissible evidence, he cannot complain if the court permits his opponent in rebuttal to introduce similar inadmissible evidence"); *see, e.g., State v. Goar*, 295 N.W.2d 633, 634–35 (Minn.1980) (permitting admission of evidence of defendant's refusal to give written statement to police, where defense counsel had elicited testimony that defendant had cooperated with police).

■ While the substance of the bargain was properly admitted, we are troubled by language in the letter, from which the jury

could have inferred that the prosecutor was "vouching" for Ploog's truthfulness. *See, e.g., Van Buren v. State,* 556 N.W.2d 548, 551 (Minn.1996) (reversing trial court's admission of testimony that others believed victim's reports of sexual assaults). While there is no evidence of direct vouching, the prosecutor attempted to elicit evidence that the state charged Ploog with a lesser offense, implying that the prosecutor believed Ploog had fulfilled his duty to provide truthful information. By admitting the letter, the trial court improperly diverted the jury's attention away from its own duty to assess Ploog's credibility and toward the prosecutor's personal assessment of truthfulness. *See State v. Richardson,* 514 N.W.2d 573, 578 (Minn.App.1994) (noting prosecutor's question to witness's attorney improperly implied prosecutor had personal knowledge state's witness testified truthfully).

■ Although we conclude the trial court abused its discretion by admitting the letter, this error does not compel reversal. A defendant claiming error in the trial court's admission of evidence must show a reasonable possibility the error substantially influenced the jury to convict. *State v. Post,* 512 N.W.2d 99, 102 n. 2 (Minn.1994); *State v. Loebach,* 310 N.W.2d 58, 64 (Minn.1981). The record demonstrates: (1) the murder took place after Folkers argued with the victim; (2) Ploog had no motive to shoot the victim; (3) although Ploog admitted he had, on a previous occasion, accidentally discharged the gun, Folkers's theory that Ploog accidentally shot the victim was highly improbable, given the heated argument between Folkers and the victim immediately preceding the shooting; and (4) defense counsel thoroughly challenged Ploog's credibility, impeaching him with his prior convictions and false statements to police. Under these circumstances, there is no reasonable possibility that the erroneous admission of vouching evidence influenced the jury to convict Folkers.

### B. Relationship With Victim

*Spreigl* evidence, or evidence of prior bad acts, is admissible to show motive, intent, preparation, or plan, when the state's case is inadequate without the evidence. Minn. R.Evid. 404(b) (listing proper purposes for such evidence); *see State v. Stagg,* 342 N.W.2d 124, 127 (Minn.1984) (allowing admission of prior bad acts evidence when direct and circumstantial evidence on issue is weak or inadequate). *Spreigl* evidence is admitted properly if it: (1) is relevant and material to the state's case; (2) is clear and convincing; and (3) has probative value outweighing its potential for unfair prejudice. *State v. Filippi,* 335 N.W.2d 739, 743 (Minn.1983).

■ Folkers argues the trial court abused its discretion in admitting evidence of Folkers's tumultuous relationship with the victim. However, evidence of conduct occurring in the course of a relationship between a defendant and a homicide victim is admissible in trial. *State v. Langley,* 354 N.W.2d 389, 397 (Minn.1984). Such evidence serves the proper purposes of showing motive, absence of mistake or accident, and the history of the relationship. *Id.; see State v. Thieman,* 439 N.W.2d 1, 6 (Minn.1989) (admitting evidence to show "strained relationship"); *State v. Waukazo,* 374 N.W.2d 563, 565 (Minn.App.1985) (holding history of relationship admissible to place charged offense in proper context), *review denied* (Minn. Nov. 1, 1985).

Here, the trial court admitted testimony by two of the victim's co-workers regarding their personal knowledge of the prior relationship between Folkers and the victim. The court carefully excluded all hearsay statements concerning the victim's fear of Folkers, and also excluded, as cumulative, a third witness's testimony about prior assaultive conduct. The co-workers' testimony was relevant to establish Folkers's motive, the absence of accident in the shooting, and to put the crime in the proper factual context. Although the availability of Ploog's eyewitness testimony may have lessened somewhat the state's need for this evidence, we conclude the trial court did not abuse its discretion in admitting the tumultuous relationship evidence.

### II.

Pursuant to a defendant's challenge to the sufficiency of the evidence, this court must

view the evidence in the light most favorable to the jury's verdict, assuming the jury believed the state's witnesses and disbelieved any evidence to the contrary. *State v. Moore*, 438 N.W.2d 101, 108 (Minn.1989). We will uphold the verdict if the jury, giving due regard to the presumption of innocence and the state's burden of proof, reasonably could have found the defendant guilty. *State v. Merrill*, 274 N.W.2d 99, 111 (Minn.1978).

Folkers argues the evidence supporting his conviction is insufficient without Ploog's testimony, which Folkers claims is at odds with the circumstantial evidence. However, inconsistencies in the state's case do not require reversal if the testimony taken as a whole is consistent and credible. *State v. Pieschke*, 295 N.W.2d 580, 584 (Minn.1980). Folkers has not demonstrated any significant inconsistency between Ploog's testimony and the physical evidence offered at trial. Viewing the evidence in the light most favorable to the verdict, and assuming the jury believed Ploog's testimony and disbelieved Folkers's testimony, the record supports the jury's verdict of guilty.

### III.

A trial court has broad discretion in sentencing, and we will not reverse a sentence absent a clear abuse of that discretion. *State v. Garcia*, 302 N.W.2d 643, 647 (Minn.1981). Unless substantial and compelling circumstances warrant deviation, a trial court must impose the presumptive sentence under the Minnesota Sentencing Guidelines. *Id.* (quoting Minn. Sent. Guidelines II.D). An upward departure is permissible if a defendant's conduct is significantly more serious than that typically involved in the commission of the particular offense. *State v. Cox*, 343 N.W.2d 641, 643 (Minn.1984). We examine the record independently to determine whether it supports the trial court's stated reasons for a departure. *Williams v. State*, 361 N.W.2d 840, 844 (Minn.1985).

In departing from the presumptive guidelines sentence for Folkers's conviction, the trial court relied on numerous aggravating factors, including Folkers's failure to give aid to the victim, his treatment of the body after the shooting, and his lack of re-

morse. *See, e.g., State v. Chaklos*, 528 N.W.2d 225, 228 (Minn.1995) (affirming upward departure where defendant tried to "pin the blame" for offense on other person); *State v. Murr*, 443 N.W.2d 833, 837 (Minn. App.1989) (recognizing defendant's transportation of victim's body in car trunk related to particular cruelty of offense), *review denied* (Minn. Sept. 27, 1989); *State v. Morrison*, 437 N.W.2d 422, 429 (Minn.App.1989) (citing defendant's failure to provide medical attention to victim as ground for sentencing deviation), *review denied* (Minn. Apr. 26, 1989), *cert. denied*, 493 U.S. 858, 110 S.Ct. 167, 107 L.Ed.2d 124 (1989).

The record demonstrates that Folkers: (1) shot the victim in the face with a .44 magnum handgun; (2) left her body lying on the floor of his garage until the following night; (3) concealed the victim's body under several blankets in her van and left the van in a parking lot across town; (4) cleaned his garage, removed all of the victim's personal belongings, disposed of the bullet fragments, and burned the garage floor with lacquer thinner to remove all traces of blood; and (5) tried to "pin" the crime on another person. Given these facts, we conclude the aggravating factors cited by the trial court are supported by the record and show Folkers's conduct was particularly egregious. The trial court did not abuse its discretion by sentencing Folkers to a 17 percent upward departure from the presumptive sentence.

### DECISION

Admission of the letter setting out Ploog's agreement with the prosecution was harmless error. The trial court did not abuse its discretion in admitting prior bad acts evidence, and the evidence at trial was sufficient to support conviction. In addition, the trial court's upward departure from the presumptive sentence did not constitute an abuse of discretion.

**Affirmed.**