Richard Charles **DILLON**,
petitioner, Appellant,

v.

**STATE of Minnesota, Respondent.**

No. A09–1026.

Court of Appeals of Minnesota.

May 11, 2010.

Bradford Colbert, Legal Assistance to Minnesota Prisoners, St. Paul, MN, for appellant.

Lori Swanson, Attorney General, St. Paul, MN; and Michael O. Freeman, Hennepin County Attorney, Lee W. Barry, Assistant County Attorney, Minneapolis, MN, for respondent.

Considered and decided by ROSS, Presiding Judge; STONEBURNER, Judge; and STAUBER, Judge.

## OPINION

ROSS, Judge.

Richard Dillon's wife spent three weeks in intensive care following life-saving surgery and another month hospitalized after Dillon struck and kicked her while she lay on the floor. Dillon inflicted the following injuries while taunting her between several of the blows: broken ribs; head, face, arm, and torso bruising; massive contusion of the vaginal and inner-thigh region; severe liver laceration requiring a hepatectomy; "blowout" eye fracture requiring surgery and causing permanent vision loss; swollen gallbladder requiring a cholecystectomy; large-intestine damage requiring an ileostomy and a colectomy; swollen or fractured larynx requiring a tracheostomy; blood loss of two quarts (about half her total supply) before surgery and six quarts of ongoing transfusion during surgery; temporary dependence on a respirator and a colostomy bag; and disfiguring scars from surgical openings.

Dillon appeals from the postconviction court's refusal to reduce his 240–month prison sentence for first-degree assault.

He argues that the circumstances were not severe enough to justify imprisonment for more than double the presumptive sentence, contending that the sentencing court improperly focused on his wife's injuries rather than on his conduct. And he argues that because his appellate counsel failed to make this argument during his first appeal, he received constitutionally deficient representation. Because severe aggravating factors to support the departure can be inferred from the nature and extent of the victim's injuries, Dillon's first argument fails, and because an earlier rendition of the same argument would have fared no better, his second argument fails. We affirm.

## FACTS

Minneapolis police went to Richard Dillon's apartment on a report of loud arguing. Dillon answered the door with blood on his chest and legs. He told officers that he had been arguing with his wife. Officers asked to see her. Dillon left the officers and returned a few moments later claiming that his wife did not want to come to the door. The officers asked for permission to check on her, and Dillon finally allowed them in.

The officers found Dillon's wife, K.P., lying on the bedroom floor. She was bleeding significantly from her face and having difficulty breathing. She groaned in pain and told officers that Dillon beat her.

K.P. went to the hospital by ambulance. She was covered with bruises, had multiple broken ribs on both sides, and her eye had a blowout fracture. An abdominal CT scan revealed a deep liver tear and internal bleeding. So doctors rushed her into surgery. The surgeon discovered that K.P.'s liver was severed with a portion "hanging on by a thread." K.P. had a class-four hemorrhage, the most severe

type. Surgeons suctioned two quarts of blood from her abdomen; the average person has four to five quarts in her entire body. K.P. continued bleeding during the surgery, requiring six quarts of transfused blood. The liver damage was consistent with blunt force, and the surgeon later estimated that between one in five and one in three people would die from a similar liver laceration and blood loss.

Two days later, a surgeon removed K.P.'s gallbladder and inserted a feeding tube. One week later, doctors removed approximately a third of K.P.'s large intestine. This surgery required K.P. to use a colostomy bag for two months. Doctors inserted a breathing tube, and K.P. spent two weeks on a respirator. She continued to experience difficulty breathing after the tube was removed, requiring a tracheostomy. In all, K.P. lost most of her blood, part of her liver, some of her vision, much of her large intestine, and all of her gallbladder. K.P. spent three weeks in intensive care and an additional month hospitalized.

Dillon, 300 pounds, admitted that he slapped K.P., 130 pounds, about five times hard enough to make her nose and lip bleed. K.P. recounted that between several of the blows, Dillon taunted her, asking, "How does that feel?" Dillon admitted that he grabbed K.P. by the arm, "prodded" her in the back with his knee, kicked her in the shoulder, and pushed on her ribs with his foot. He also admitted that he stepped on K.P.'s stomach and kicked her in the face. But Dillon minimized the force of his attack and testified that K.P.'s injuries might have been caused by the police, paramedics, or surgeons. The district court was not persuaded and found that Dillon caused all of K.P.'s injuries. It found him guilty of first-degree assault.

The state moved for an upward departure from the presumptive sentence of 86 months in prison. The district court agreed and sentenced Dillon to the statutory maximum sentence of 240 months. Dillon appealed from his conviction, challenging the validity of his waiver of the right to counsel, the validity of the search of his home, and the sufficiency of the evidence. This court affirmed. *State v. Dillon*, No. C7–99–252, 1999 WL 970322 (Minn.App. Oct.26, 1999), *review denied* (Minn. Dec. 14, 1999).

Dillon filed a petition for postconviction relief in June 2004. Clerical errors delayed action on the petition until early 2009. Dillon filed an amended postconviction petition, arguing that the district court had imposed an unlawful sentence and that he had received ineffective assistance of counsel because his original appellate attorney did not make the sentencing argument. The district court denied the petition. Dillon appeals.

## ISSUES

I. What standard of review applies to a challenged prison sentence resulting from an upward departure and comprising a term that is more than twice the presumptive sentence?

II. Did the district court abuse its discretion by departing upward from the sentencing guidelines to impose a sentence that more than doubled the presumptive term?

III. Did the appellant receive ineffective assistance of counsel in his previous appeal because his lawyer did not argue that the district court imposed an unlawful sentence?

## ANALYSIS

Dillon argues that aggravating circumstances did not justify the upward durational sentencing departure that increased his sentence to approximately 2.8 times the

presumptive term. He asks that his sentence be reduced to 172 months, double the presumptive sentence length. Specifically, Dillon asks us to apply a strict standard of review, to deem the departure excessive, and to determine that his original appellate attorney gave him constitutionally deficient representation.

## I

■■ We first consider Dillon's contention that our standard of review should be especially exacting given the length of the postdeparture sentence here. Generally, appellate courts review sentences that depart from the presumptive guidelines range for an abuse of discretion. *Taylor v. State*, 670 N.W.2d 584, 588 (Minn.2003). Abuse of discretion is also the standard for reviewing denials of postconviction relief. *Leake v. State*, 737 N.W.2d 531, 535 (Minn. 2007). Dillon maintains that we should review his departure more strictly than this standard requires. He cites to no specific cases announcing a different standard, but he argues that the "general tone" of courts reviewing departures that more than double the presumptive sentence suggests a standard of review that is less deferential to the district court's judgment. The argument has some weight.

■ We generally reject Dillon's broad proposition that the abuse-of-discretion standard does not apply to our review of the district court's decision to impose a sentence longer than double the presumptive sentence. We have surveyed the greater-than-double-departure cases and have found no opinions specifically announcing an elevated standard of review. *See State v. Shattuck*, 704 N.W.2d 131, 140 (Minn.2005) ("We review the district court's decision to depart from the guidelines' presumptive sentence for an abuse of discretion."); *State v. Spain*, 590 N.W.2d 85, 88 (Minn.1999) ("A trial court's decision

to depart from the presumptive sentence specified in the sentencing guidelines is reviewed for an abuse of discretion."); *State v. Mesich*, 396 N.W.2d 46, 53 (Minn. App.1986) ("The trial court did not abuse its discretion in sentencing defendant as it did."), *review denied* (Minn. Jan. 2, 1987). We conclude that we review upward durational sentencing departures that are greater than twice the presumptive sentence for an abuse of discretion.

But "abuse of discretion" is a broad umbrella standard that encompasses varying degrees of deference. Addressing Dillon's argument that a stricter standard applies here is somewhat complicated by that fact, particularly because appellate courts have given more or less deference to departures depending on the focus of the challenge. A close look at the caselaw at the various stages of the departure analysis provides some guidance.

■■ We emphasize initially that the decision whether to reverse a challenged sentence ultimately reflects the answer to the more fundamental question of whether the sentence imposed is "excessive." *See Spain*, 590 N.W.2d at 90 (reducing a sentence by four years because the imposed sentence was "disproportional to the severity of appellant's conduct"); *State v. Partlow*, 321 N.W.2d 886, 887 (Minn.1982) (Kelly, J., dissenting) (agreeing with the majority that although substantial and compelling circumstances to depart existed, the sentence imposed was "excessive"); *see also* Minn.Stat. § 244.11, subd. 2(b) (Supp.1997) (providing that appellate courts may set aside or vacate a challenged sentence if it is, among other things, excessive or unreasonable). A sentencing court should exceed the presumptive sentence only if it deems the lengthened term to be "more appropriate, reasonable, or equitable than the presumptive sentence." *State v. Bingham*,

406 N.W.2d 567, 570 (Minn.App.1987) (quotation omitted).

On those fundamentals, we turn to the abuse-of-discretion standard of review applied to upward sentencing departures. A sentence within the sentencing guidelines range is presumed appropriate. Minn. Sent. Guidelines II.D (1996). The district court must impose that presumptive sentence unless "substantial and compelling circumstances" based on aggravating factors warrant an upward departure. *Id.; State v. Jackson,* 749 N.W.2d 353, 360 (Minn.2008). The sentencing guidelines contain a nonexclusive list of aggravating factors that may justify a departure. Minn. Sent. Guidelines II.D.2.b. "Substantial and compelling circumstances" are factual circumstances that significantly distinguish the case, making it atypical. *State v. Peake,* 366 N.W.2d 299, 301 (Minn.1985); *State v. Back,* 341 N.W.2d 273, 276 (Minn. 1983). Conduct that constitutes proof of the criminal offense cannot be a circumstance justifying an upward departure. *State v. Williams,* 608 N.W.2d 837, 840 (Minn.2000). The circumstances that underlie the departure are questions of fact for the sentencing jury or, after waiver, for the district court. *State v. Stanke,* 764 N.W.2d 824, 828 (Minn.2009).

The supreme court has explained that reviewing for abuse of discretion requires us to determine whether the district court's reasons for the departure are "improper or inadequate." *State v. McIntosh,* 641 N.W.2d 3, 8 (Minn.2002) (citing *Williams v. State,* 361 N.W.2d 840, 844 (Minn.1985)). And even when some reasons are improper or inadequate, we will affirm the sentence if we conclude that the district court would have departed based on other aggravating factors supported by its findings. *See State v. Vance,* 765 N.W.2d 390, 395–96 (Minn.2009) (affirming double departure after rejecting presence-of-a-nonwitnessing-child as a proper ground because the remaining two factors independently supported the departure and it was "reasonable to conclude that the district court would have imposed the same sentence").

Despite our overall review of departures for an abuse of discretion, the question of whether the district court's reason for the departure is "proper" is treated as a legal issue. "[A] sentencing court has no discretion to depart [upward] from the sentencing guidelines unless aggravating ... factors are present." *Spain,* 590 N.W.2d at 88. The supreme court has recently demonstrated that it applies a de novo standard when reviewing whether a particular reason for an upward departure is permissible. In *State v. Vance,* the supreme court considered whether a jury instruction had accurately described the evidence necessary to support a departure based on a finding that the offense was committed in the presence of children. 765 N.W.2d at 394. It treated the question as a matter of law without deferring to the district court's legal assessment, holding that the state is required to prove that a child witnessed the offense for the child's presence to constitute an aggravating factor. *Id.; see also State v. Grampre,* 766 N.W.2d 347, 350 (Minn.App. 2009) ("The issue whether a particular reason for an upward departure is permissible is a question of law, which is subject to a de novo standard of review." (citing *Jackson,* 749 N.W.2d at 357)), *review denied* (Minn. Aug. 26, 2009).

Once we determine as a matter of law that the district court has identified proper grounds justifying a challenged departure, we review its decision *whether* to depart for an abuse of discretion. *State v. Reece,* 625 N.W.2d 822, 824 (Minn.2001). In practice, review of this decision has

been extremely deferential; we have found no case in which this court or the supreme court has overturned a district court's decision *to* depart (as opposed to its decision of the length of the departure) when adequate departure grounds exist.

■ Despite having general discretion to make departure decisions, the district court has less discretion to decide the length of the upward departure than it does to decide whether to depart: The shorter the departure, the greater the deference given to the district court's discretion. Departures that enhance a sentence to a term that falls between the presumptive sentence and twice the presumptive sentence invite the greatest deference. We have generally deferred entirely to the district court's judgment on the proper length of departures that result in sentences of up to double the presumptive term. *See State v. Thompson,* 720 N.W.2d 820, 831 n. 4 (Minn.2006). We have found no cases in which an appellate court has held that adequate grounds to depart exist but that the district court abused its discretion by extending the sentence up to twice its presumptive term.

■ The statutory maximum sentence is the absolute ceiling on the district court's sentencing discretion. *State v. Glaraton,* 425 N.W.2d 831, 834 (Minn. 1988). But the supreme court has also imposed an incremental restriction. It concluded in *State v. Evans* that a court generally should not increase a sentence's length beyond twice the presumptive sentence. 311 N.W.2d 481, 483 (Minn.1981). The *Evans* court did not intend the doubled length to replace the statutory limit as the absolute ceiling, noting that "there may well be rare cases in which the facts are so unusually compelling that an even greater degree of departure will be justified." *Id.* But the district court's discretion to impose a sentence that runs longer

than twice the presumptive term is limited to circumstances in which "*severe* aggravating circumstances" exist. *Shattuck,* 704 N.W.2d at 140 (emphasis added). At the same time, the supreme court warned that the district court should not assume that it has unlimited discretion to impose a sentence of double the presumptive term, cautioning, "[W]e do not intend to suggest that trial courts should automatically double the presumptive length in all cases in which upward departure is justified nor do we suggest that we will automatically approve all departures of this magnitude." *Evans,* 311 N.W.2d at 483.

Dillon's contention that the abuse-of-discretion standard does not apply here springs from his view that, after *Evans,* the supreme court has applied a more stringent review of lengthy sentences. No case has held that a district court's determination of the *Evans* "severity" issue is entitled to no deference on review or even that appellate review includes an exacting standard such as Dillon suggests. But neither has any case treated the question of severity as a matter of substantial deference to the district court's broad discretion. The supreme court has not provided an *Evans* test, but enough cases have been decided since *Evans* to frame our review structure.

Although the supreme court acknowledged early on that "[t]here is no easy-to-apply test to use in making this decision [to impose a departure that more than doubles the sentence], and [that] there is no clear line that marks the boundary between 'aggravating circumstances' justifying a double departure and 'severe aggravating circumstances' justifying a greater than double departure," *State v. Norton,* 328 N.W.2d 142, 146 (Minn.1982), the court has not been greatly deferential to the district court's severity determinations. It is true that the supreme court

"afford[s] the trial court great discretion in the imposition of sentences and [that appellate courts] cannot simply substitute their judgment for that of the trial court." *Spain,* 590 N.W.2d at 88. But the supreme court has also stated and demonstrated that it "has discretion in individual cases" and that despite the district court's discretion, the supreme court will use its own discretion on appeal from upward sentencing departures to alter a sentence "in the interests of fairness and uniformity." *State v. Vazquez,* 330 N.W.2d 110, 112 (Minn.1983); *see also State v. Johnson,* 450 N.W.2d 134, 135 (Minn.1990) (reducing sentence without explanation except that "we believe that this is not such an extraordinary case that a greater-than-double durational departure is justified"); *State v. Weaver,* 474 N.W.2d 341, 343 (Minn.1991) (reducing sentence and explaining only, "we do not believe that this is that 'rare' case where the aggravating circumstances are so severe as to justify a departure greater than authorized by *Evans* ").

The supreme court frames its appellate discretion from its state-wide, multijurisdictional perspective of appealed cases. Before the formation of the Minnesota Court of Appeals in 1983, the supreme court handled all sentencing appeals from all judicial districts. In that context the supreme court explained, "[O]ur decision whether there were 'severe aggravating circumstances' [beyond merely 'aggravating circumstances,' which warrant up to a double durational departure] must be based on our collective, collegial experience in reviewing a large number of criminal appeals from all the judicial districts." *Norton,* 328 N.W.2d at 146–47. No case has discussed how the establishment of the court of appeals and the consequential reduction in the number of criminal appeals the supreme court reviews affects the premise of that assessment. But the su-

preme court has repeated the "collective, collegial experience" phrase long after the creation of this court, and a broad perspective to identify the "rare" case that is atypical because of severe aggravating factors remains the basis of appellate discretion. *See Rairdon v. State,* 557 N.W.2d 318, 327 (Minn.1996); *see also State v. Wilkinson,* 539 N.W.2d 249, 253 (Minn. App.1995) (quoting *Norton* and stating that the court of appeals, too, applies its "collective collegial experience in reviewing a large number of criminal appeals" to determine if a case is "rare"). It is clear that the supreme court continues to review district court determinations of severity without affording great deference. *See Spain,* 590 N.W.2d at 90 (reducing appellant's sentence even after acknowledging that her conduct was clearly egregious).

There remains "no easy-to-apply test" of severity. The caselaw indicates that the inquiry is unstructured and that the outcome can depend on alternative factors, such as the extent of a victim's vulnerability, the shocking nature of a victim's degradation, the permanence of the victim's injury, the number of separate attacks on the same victim, the concealment of a victim's body, the presence of multiple aggravating factors, or the exposure of the victim to an incurable disease: "[T]he absolute vulnerability of the helpless victim" was a sufficiently severe aggravating circumstance to warrant a sentence of more than three times the presumptive term for second-degree manslaughter of a two-year-old child whom the defendant punched several times in the chest. *State v. Stumm,* 312 N.W.2d 248, 249 (Minn. 1981). Subjecting the victim "to outrageously gross and vile physical abuse" was sufficiently severe in a case of first-degree criminal sexual conduct. *State v. Herberg,* 324 N.W.2d 346, 350 (Minn.1982); *see also Glaraton,* 425 N.W.2d at 834 (concluding

that severe aggravating circumstances were present in a case factually similar to *Herberg* ). The victim's permanent injury in an "extraordinarily brutal" sexual assault, burglary, and kidnapping has been of "particular significance" in finding severity. *State v. Van Gorden,* 326 N.W.2d 633, 634–35 (Minn.1982). The number of separate attacks on a child victim justified a departure based on severity in *State v. Wellman,* 341 N.W.2d 561, 566 (Minn. 1983). The defendant's concealment of the victim's body after committing second-degree murder has warranted a severity determination. *State v. Ming Sen Shiue,* 326 N.W.2d 648, 655 (Minn.1982). The defendant's multiple aggravating factors, such as lengthy offensive conduct, targeting multiple victims, use of guile, and likelihood of repetition, together justified a sentence of more than twice the presumptive term in a terroristic threats case. *State v. Murphy,* 545 N.W.2d 909, 917 (Minn.1996). And "[f]orcibly raping someone while knowingly in the full-blown stages of AIDS" constitutes severe aggravating circumstances. *Perkins v. State,* 559 N.W.2d 678, 692 (Minn.1997). These cases teach that just as we do not defer to the district court's judgment on the initial question of whether a factor constitutes a substantial and compelling circumstance to justify a decision to depart, we similarly review without deferring to the district court the later issue of whether the circumstances are sufficiently severe to justify a decision to depart beyond twice the presumptive sentence.

▮▮▮ We conclude from this survey that we undertake the abuse-of-discretion review in departure challenges in this manner: We conduct a de novo assessment of the district court's first departure decision, which is whether a valid reason to depart exists, relying on the district court's fact findings that supply the basis

for the decision. We will also conduct a de novo review of the second departure decision, which is whether the valid departure reasons are severe, so as to justify a sentence that runs longer than twice the presumptive sentence. A district court abuses its discretion if it relies on invalid bases either to depart or to extend the sentence beyond double its presumptive length. Even when an upward departure is justified, the extent of the departure must justified by the reason to depart. Although we give great deference to the district court's judgment regarding the length of an up-to-double sentence when a valid departure reason exists, our broader, multi-jurisdictional perspective indicates that our review of the length of a more-than-doubled sentence should be less deferential. And even if the aggravating circumstances are severe, we should find an abuse of discretion and reduce a sentence for uniformity's sake when the departure results in a term that is longer than sentences for similar or more serious crimes, as in *Evans* and *State v. Givens,* 332 N.W.2d 187, 190 (Minn.1983), or longer than sentences imposed on the appellant's coconspirators, as in *State v. McClay,* 310 N.W.2d 683, 685 (Minn.1981).

Dillon therefore incorrectly contends that this court applies something other than an abuse-of-discretion standard of review to the departure decision; but he correctly understands that in the case of a more-than-doubled sentence, the district court's discretion is limited and subject to our appellate discretion. We apply this standard to Dillon's challenge.

## II

Dillon argues that this is not one of the "extremely rare" cases in which a greater-than-double departure is justified. He concedes that there may be aggravating factors here that would justify a departure

that doubles the sentence, but he argues that his assault included no aggravating factors so *severe* as to justify a departure that nearly triples the presumptive sentence. In making this argument, Dillon also contends that some of the factors relied on by the district court do not constitute aggravating factors at all. We therefore first address whether the aggravating factors relied on by the district court constitute substantial and compelling circumstances to justify the decision to depart, and then we address whether these factors qualify as "severe," justifying a departure that resulted in a sentence nearly triple the length of the presumptive sentence.

### A. *Validity of Aggravating Factors*

■ The district court stated that it was departing upward due to three factors: (1) Dillon's lack of remorse and denial of responsibility for the degree of the assault, (2) K.P.'s vulnerability during the assault, and (3) the particular cruelty and degree of the assault. Even a single aggravating factor may justify a departure. *See, e.g., State v. O'Brien,* 369 N.W.2d 525, 527 (Minn.1985) (upholding double durational departure when only one aggravating factor was present); *State v. Harwell,* 515 N.W.2d 105, 109 (Minn.App.1994) (holding that particular cruelty alone can justify double departure), *review denied* (Minn. June 15, 1994).

### 1. Lack of Remorse and Blame Shifting

■ The district court observed that Dillon's only remorse was for the so-called "slight slapping" that he admitted to. Dillon made groundless accusations throughout trial that the same people who saved K.P.'s life caused her injuries. The district court found that Dillon had not taken responsibility for the degree of the assault

that he actually committed and that his blaming of others reflected his lack of remorse. The finding is well supported by evidence.

Dillon argues that lack of remorse should not be a factor justifying a durational departure. We are not persuaded.

Whether a defendant's lack of remorse is an appropriate aggravating factor for an upward durational departure has received somewhat conflicting treatment in the caselaw. In *State v. Schmit,* the supreme court held that an upward departure was justified because the appellant's conduct was more serious than the typical act of heat-of-passion manslaughter, but it noted that the appellant's concealment of the body and his lack of remorse were "not factors justifying aggravation of the sentence." 329 N.W.2d 56, 58 n. 1 (Minn. 1983). In *State v. Bauerly,* this court stated that lack of remorse is relevant to a *dispositional* departure because it generally bears on the defendant's amenability to probation. 520 N.W.2d 760, 762 (Minn. App.1994), *review denied* (Minn. Oct. 27, 1994). But we also recognized that "there may be cases in which the defendant's lack of remorse could relate back and be considered as evidence bearing on a determination of the cruelty or seriousness of the conduct on which the conviction is based." *Id.* (quotation omitted). And more recent cases uphold upward durational departures when lack of remorse was identified as an aggravating factor. *See, e.g., State v. Griller,* 583 N.W.2d 736, 744 (Minn.1998) (concluding that the district court did not abuse its discretion by departing upward based on appellant's particular cruelty, concealment of the body, lack of remorse, and denial of responsibility and attempt to shift blame); *State v. Folkers,* 562 N.W.2d 5, 9 (Minn.App.1997) (holding that the aggravating factors cited by the district court, including lack of remorse, showed

that the appellant's conduct was particularly egregious and justified an upward durational departure), *aff'd as modified* (Minn. July 9, 1998).

■ Dillon's post-offense lack of remorse relates back to his conduct during the offense because his lack of remorse intertwines with his attempt to shift blame to others for causing K.P.'s injuries. Precedent more clearly supports relying on a defendant's attempt to shift blame as an aggravating factor. A defendant's attempt to transfer responsibility to others is offense-related conduct that may support an upward durational departure. *See State v. Chaklos*, 528 N.W.2d 225, 228 (Minn.1995); *State v. Elkins*, 346 N.W.2d 116, 119 (Minn.1984).

Dillon's argument would be more compelling if the district court had relied solely on his lack of remorse. But the district court did not treat this as an independent aggravating factor. The district court considered this factor together with Dillon's denial of responsibility and the other two factors. Dillon's lack of remorse and refusal to accept responsibility for K.P.'s life-threatening injuries combine to constitute an aggravating factor on which the district court could base a decision to depart upward from the guidelines sentence.

### 2. Vulnerability

■ The district court identified the victim's vulnerability "during a good portion of the assault" as an aggravating factor. Victim vulnerability is listed as an aggravating factor in the sentencing guidelines. *See* Minn. Sent. Guidelines II. D.2.b.(1) (1996) ("The victim was particularly vulnerable due to age, infirmity, or reduced physical or mental capacity, which was known or should have been known to the offender."); *see also State v. Bock*, 490 N.W.2d 116, 121 (Minn.App.1992) (finding that the victim was particularly vulnerable when he was attacked in the middle of the

night while alone, fell from the impact of appellant's first blow, and was dazed and in a vulnerable condition when appellant hit him a second time), *review denied* (Minn. Aug. 27, 1992).

The findings that underlie the district court's vulnerability assessment are well-supported. Dillon admitted at trial that he continued to assault K.P. after she fell to the floor and that she appeared to be unconscious. K.P. testified that she blacked out during the assault. She remembered being kicked in the ribs and the face, but she remembered nothing more until she heard someone ask, "Who did this to you?" Neither K.P. nor Dillon had injuries that suggest that K.P. had defended herself. The record supports the finding that K.P. was particularly vulnerable, and entirely defenseless, during portions of Dillon's attack. Dillon's assault rendered K.P. vulnerable, and his assault was more effective because she was vulnerable.

### 3. Particular Cruelty

■ The district court cited particular cruelty based on the extensive degree of the assault as the most compelling reason for departing. Particular cruelty is also expressly identified by the sentencing guidelines as an aggravating factor. Minn. Sent. Guidelines II.D.2.b.(2) (1996). A finding of particular cruelty may be appropriate when a defendant's conduct is significantly more cruel than conduct typically associated with the offense of conviction. *State v. Weaver*, 733 N.W.2d 793, 803 (Minn.App.2007), *review denied* (Minn. Sept. 18, 2007).

Dillon argues that the district court's finding of particular cruelty was erroneous because the court focused on the nature of K.P.'s injuries, not on his conduct. Dillon accurately observes that the district court emphasized the serious nature of K.P.'s injuries when it denied postconviction re-

lief. It described the attack as "one of the most extreme and egregious assault cases this court has ever encountered" and identified K.P.'s extensive injuries, outlined above. But Dillon's argument fails because victim injuries have been relied on in multiple departure cases and, independently, because the victim's injury here is a useful indicator of the degree of brutality involved beyond the typical case and beyond what is necessary to meet the elements of first-degree assault.

Two cases particularly inform our decision to reject Dillon's argument. In *Van Gorden*, the supreme court upheld a more-than-triple departure from the presumptive sentence for sexual assault. 326 N.W.2d at 635. The *Van Gorden* court explained that "[a]lthough infliction of injury is an element of the offense of which [Van Gorden] was convicted, the injury inflicted nonetheless can be considered as an aggravating factor in this case because of its serious and permanent nature." *Id.* at 634. In *State v. Felix*, this court held that an upward departure was justified because the defendant's first-degree assault was significantly more serious than the typical assault where great bodily harm is inflicted. 410 N.W.2d 398, 401 (Minn.App.1987), *review denied* (Minn. Sept. 29, 1987). The victim's injuries "did not simply involve one of the factors defining 'great bodily harm;' it involved *all* of them." *Id.* The nature of Dillon's first-degree assault puts this case in the same frame. Minnesota statutes section 609.02, subdivision 8 (1996), the definitional provision underlying Dillon's conviction, declares "great bodily harm" to be bodily injury that (1) creates "a high probability of death," (2) "causes serious permanent disfigurement," (3) "causes a permanent or protracted loss or impairment of the function of any bodily member or organ," or (4) "[causes] other serious bodily harm." K.P.'s injuries satisfy all four categories of injuries that constitute great bodily harm. The district court accurately summarized this as not the "typical first-degree assault."

The district court also properly concluded that Dillon acted with particular cruelty based on the extent of K.P.'s injuries. A victim's injuries can inform the factfinder of the attacker's particular conduct, including the number of blows, the force used, and the nature of the attack. By rendering K.P. unconscious during portions of the assault and by offering the implausible suggestion that emergency responders and physicians actually caused K.P.'s injuries, Dillon essentially required the district court to look to the nature and extent of K.P.'s injuries as the only credible evidence of the manner and degree of his assault.

Dillon's argument fails to address the other particularly cruel conduct that he engaged in during the assault. K.P. recalled that Dillon taunted her between some of the early blows, asking, "How does that feel?" Some of the focus of Dillon's attack was also atypically degrading and gratuitous by comparison to the common first-degree assault; beyond the apparent explosiveness of Dillon's kicks on K.P. while she lay defenseless, it is evident from the record that he focused multiple kicks repeatedly and violently on her vaginal area. We add that if the officers had not been persistent in overcoming Dillon's attempt to keep them from seeing his wife by claiming falsely that she did not want to come to the door, he would have delayed discovery and precluded the emergency medical attention that likely prevented this case from becoming a homicide.

## B. *Severe Nature of Aggravating Factors*

Having agreed with the district court's determination that aggravating cir-

cumstances exist, we have no difficulty holding that the circumstances that warrant the departure here are severe under the *Evans* vein of cases. As the supreme court analyzed the departure appeal in *Van Gorden*, while we deem the totality of the circumstances to be sufficiently aggravating to justify the durational departure to more than twice the presumptive sentence, we attach "particular significance" to the infliction of permanent injuries. 326 N.W.2d at 635; *see also Glaraton*, 425 N.W.2d at 832 (upholding a departure more than four times the presumptive sentence based on numerous factors, including the gratuitous physical assault of the victim and the permanent nature of the injury inflicted); *cf. State v. Partlow*, 321 N.W.2d 886, 887 (Minn.1982) (holding that a greater-than-double departure was not appropriate because the victim suffered no permanent injuries).

Dillon's conduct is comparable to other cases in which this court has upheld sentences for first-degree assault that were greater than double the presumptive length. In *State v. Leonard*, we concluded that the defendant's continued assaults on an infant justified a nearly triple durational departure to the statutory maximum sentence. 400 N.W.2d 206, 210 (Minn.App. 1987). In *State v. Wickstrom*, we affirmed a 2.5 times departure from the presumptive sentence for a defendant who beat and kicked a woman who was eight months pregnant for 20 minutes in the presence of her child. 405 N.W.2d 1, 6–7 (Minn.App. 1987), *review denied* (Minn. June 30, 1987). And in *State v. Steinhaus*, we upheld a departure that resulted in a sentence that nearly tripled the presumptive sentence when a father severely beat his five-week-old son. 405 N.W.2d 270, 271–72 (Minn. App.1987). *Leonard, Wickstrom,* and *Steinhaus,* like this case, involved prolonged assaults of vulnerable victims resulting in very serious injuries.

Dillon's attack was at the outer limit of criminal conduct for first-degree assault, falling just short of murder. Dillon's particularly cruel conduct, mostly but not entirely inferred from the serious and permanent injuries he inflicted, was a severe aggravating circumstance. K.P. testified at trial six months after the attack about the permanent effect of the assault. She lost her sense of smell and her face is numb from her right eye to her chin. She has blurry vision in her right eye, which is now farther back in her skull than her left eye. With only a partial large intestine, she has trouble controlling her bowels. She has no gallbladder and only part of her liver. She has nightmares about the assault.

Dillon also argues that the court improperly punished him as if for attempted murder, a crime for which he was not charged. As we have discussed, within our review for excessiveness we should be mindful of the relative sentences and compare sentences for more serious crimes with the challenged sentence. And similarly, the supreme court has cautioned that "the state should not be able to use the fact that it might have been able to obtain a conviction of a greater offense—*e.g.,* attempted murder—to support [a sentencing] departure." *State v. Simon*, 520 N.W.2d 393, 394 (Minn.1994). But there is no factual support in the record for Dillon's argument. The prosecutor did compare Dillon's conduct to attempted murder, but these were the prosecutor's words, not those of the district court, which never adopted them. And based on the statutory maximum sentences, we conclude that attempted first-degree murder is not a "greater offense" than first-degree assault; both crimes have a maximum sentence of 240 months. *See* Minn.Stat. § 609.17 (1996) (attempted first-degree murder);

Minn.Stat. § 609.221 (1996) (first-degree assault).

We hold that the district court did not abuse its discretion by departing from the guidelines and sentencing Dillon at more than double the length of his presumptive term. Given the severe aggravating circumstances, Dillon's sentence was not excessive.

## III

 Dillon argues that he was denied his constitutional right to the effective assistance of counsel because his previous appellate attorney failed to argue that the sentencing court imposed an illegally excessive sentence. To prevail on a claim of ineffective assistance of counsel, a defendant must show that his attorney's representation was deficient and that the deficient representation prejudiced the defense. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Dillon conceded at oral argument that if he could not establish that his sentence was illegally excessive, then he could not satisfy the prejudice prong of *Strickland.* He has failed to establish that his sentence was illegally excessive, and so Dillon was not prejudiced by his previous appellate counsel's decision not to make the argument that we have determined to be unavailing. Dillon's argument that he received ineffective assistance of previous appellate counsel necessarily fails.

## DECISION

Severe aggravating factors, including the cruelty of Dillon's conduct, which can be inferred from the nature and extent of the injuries he inflicted, support the district court's upward departure and the corresponding sentence that runs more than twice the presumptive length. The district court therefore did not abuse its discretion

by imposing the sentence, and Dillon's previous counsel's decision not to challenge the sentence did not deprive Dillon of effective assistance of counsel.

**Affirmed.**