*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0617**

State of Minnesota,
Respondent,

vs.

David John Ojeda,
Appellant.

**Filed September 15, 2014
Affirmed
Smith, Judge**

Hennepin County District Court
File No. 27-CR-13-24475

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Cheri A. Townsend, Lee W. Barry, III, Assistant County Attorneys, Minneapolis, Minnesota (for respondent)

Daniel C. Guerrero, Meshbesher & Spence, Ltd., Minneapolis, Minnesota (for appellant)

Considered and decided by Larkin, Presiding Judge; Bjorkman, Judge; and Smith, Judge.

**U N P U B L I S H E D   O P I N I O N**

**SMITH**, Judge

We affirm appellant David John Ojeda's sentence because the district court did not abuse its discretion by denying his motion for a dispositional departure and imposing the presumptive guidelines sentence.

## FACTS

Ojeda received oral sex from and performed oral sex on six-year-old A.B. on two occasions. A.B. is the daughter of Ojeda's then-girlfriend, K.O. Ojeda was living with K.O. and A.B. at the time and admitted the conduct to K.O. in a series of text messages. K.O reported the conduct to police. After A.B. corroborated Ojeda's admission in a police interview, respondent State of Minnesota charged Ojeda with one count of first-degree criminal sexual conduct.

Ojeda entered a guilty plea, which the district court accepted. At the sentencing hearing, the district court heard victim-impact statements from K.O. and A.B.'s grandmother, and a social worker read a statement from A.B., who was present in the courtroom. Ojeda also made a statement. Ojeda's father interrupted the proceedings and the district court threatened him with contempt before defense counsel asked him to leave the courtroom. Ojeda had moved for a dispositional departure, and the prosecutor and Ojeda's counsel presented arguments on that motion. The district court summarized the arguments for and against a departure, declined to depart, and imposed the presumptive sentence.

## D E C I S I O N

"We review a sentencing court's departure from the sentencing guidelines for abuse of discretion." *State v. Geller*, 665 N.W.2d 514, 516 (Minn. 2003). The district court may grant a downward departure only when it is warranted by "substantial and compelling reasons." *State v. Kindem*, 313 N.W.2d 6, 7 (Minn. 1981). When there are substantial and compelling reasons, whether to depart is within the district court's

discretion. *State v. Best*, 449 N.W.2d 426, 427 (Minn. 1989). We are "extremely differential" to the district court's decision whether to depart. *Dillon v. State*, 781 N.W.2d 588, 595 (Minn. App. 2010), *review denied* (Minn. July 20, 2010). "[I]t would be a rare case which would warrant reversal of the refusal to depart." *Kindem*, 313 N.W.2d at 7.

Ojeda asserts that "this is the rare case where reversal is warranted," and supports that assertion by arguing that the district court (1) failed to deliberately consider experts' opinions; (2) mischaracterized Ojeda's family and community support; and (3) placed undue emphasis on language Ojeda used.

## I.

Before the plea hearing, the district court ordered a pre-plea investigation and a pre-plea psychosexual evaluation, and continued the proceedings to allow for these steps to occur. Defense counsel obtained a private psychosexual evaluation during the same timeframe. The expert who completed the court-ordered psychosexual evaluation opined that Ojeda presented a "low-moderate" risk of reoffending and "is amenable to long-term intensive outpatient sex offender treatment." The private evaluator similarly opined that Ojeda presented "a [l]ow-[m]oderate risk for committing a future sex offense" and that "[t]his risk level is suitable for community supervision," assuming compliance with specific treatment recommendations.

Ojeda argues that the district court failed to deliberately consider the opinions of these experts. He cites *State v. Curtiss*, 353 N.W.2d 262, 264 (Minn. App. 1984), for the proposition that, when compelling circumstances for a departure exist, the district court

3

must deliberately consider them before imposing the presumptive sentence. Although *Curtiss* supports that proposition, Ojeda's reliance is misplaced. In *Curtiss*, the district court found that "there [was] no justifiable reason to deviate" from the presumptive sentence. *Id.* at 263. We disagreed, pointed to factors militating for and against a downward departure, and decided that "the departure topic was abandoned before the [district] court exercised its broad discretion [by] comparing reasons for and against departure. *Id.* We remanded for resentencing, concluding that "[t]his is not that rare case where we interfere with the exercise of discretion, but a case where the exercise of discretion has not occurred." *Id.* at 264.

This case is unlike *Curtiss* because the record here shows that the district court did exercise its discretion. The district court acknowledged that several factors, including the experts' opinions, supported departure. It also discussed factors that weighed against departure. The district court did not discuss the experts' reports at length, but acknowledged that "two mental health experts believe [Ojeda] can be treated." Ojeda complains that apart from that acknowledgment, the district court "did not address why, in this particular case, prison was a better alternative for Mr. Ojeda or society." Ojeda seems to suggest that the district court had a duty to explain—before it could impose the presumptive sentence—why non-departure is in his best interest, or that of society. No such duty exists. To the contrary, a district court must explain a decision to depart in writing, but a district court's authority to impose the presumptive sentence is not predicated on its delivery of a detailed explanation of its reasons for doing so. *See id.* at 263 (explaining that "[t]he [district] court must explain in writing a decision to depart,

4

but a written explanation is not required when the court considers reasons for departure but elects to impose the presumptive sentence") (citing Minn. Sent. Guidelines II.D; Minn. R. Crim. P. 27.03(4)(C)).

We conclude that Ojeda's argument lacks merit because the record shows that the district court did consider the experts' opinions and exercised its broad discretion before imposing the presumptive sentence.

## II.

The record includes three letters of support that were submitted before the sentencing hearing—one from a former girlfriend with whom Ojeda shares a child, one from his ex-wife with whom he shares two children, and one from his mother. Those three women were present at the sentencing hearing, along with Ojeda's father. The letters they submitted characterize Ojeda as a good father, hard-working, dutiful, and big-hearted. The district court noted Ojeda's support but concluded that it could not find that Ojeda had "appropriate support."

Ojeda argues that the district court mischaracterized his support and that its mischaracterization "was inaccurate and an abuse of discretion." We reject this argument because evidence in the record justifies the district court's doubts about Ojeda's support. For instance, as K.O. approached the lectern to give a victim impact statement, Ojeda's father called her a "b-tch," interrupted the proceedings in an effort to speak on Ojeda's behalf and called out, "[b]unch of lies." Additionally, although the district court did not discuss the pretrial investigation, that report also casts doubt on the appropriateness of Ojeda's support. Ojeda's ex-wife, who submitted one of the letters of

5

support, told the investigator that she believed that A.B.'s version of events was "planted into [A.B.s] head by [K.O.]." Thus the record provides support for the district court's conclusion that Ojeda lacks appropriate support.

### III.

In explaining its decision, the district court referred to two statements Ojeda made about the incidents. First, the district court noted that when Ojeda described the factual basis for his guilty plea, he stated that during the first sexual encounter with A.B. he "allowed" her to put her mouth on his penis, and used similar words to describe the second encounter.[1] The district court characterized Ojeda's choice of words as indicating that Ojeda might believe that A.B. shared responsibility for what happened. Second, the district court mentioned a text-message exchange between Ojeda and K.O. in which K.O. expressed her distress at what had happened and Ojeda responded by asking, "Do you want me to stop?" The district court opined that the text-message exchange suggests that Ojeda might have considered continuing the conduct if K.O. had not objected.

Ojeda argues that the district court's suggestion that he deflected responsibility is not consistent with his "early expression of responsibility and expression of remorse" or the opinions of the experts that he is amenable to outpatient treatment. The district court's interpretation of the words Ojeda chose during the plea hearing does appear to be inconsistent with his later statements accepting responsibility. But the resolution of such

---

[1] The district court quoted Ojeda as saying, "I let her put her mouth on my penis." He actually said, "I allowed her to perform oral sex on me, put her mouth on my penis," in reference to the first encounter, and "I allowed her to do it," in reference to the second encounter.

inconsistencies falls squarely within the discretion of the district court. As for the text message asking K.O. whether he should stop, Ojeda asserts that he "had in fact stopped the abuse before it was reported" and claims that "[t]here was absolutely no evidence that he might consider continuing the abuse." But the facts can just as easily be interpreted as supporting the district court's concern that Ojeda might continue to offend. As the district court noted, it counts in Ojeda's favor that he is the one who reported the conduct. But ultimately the meaning of Ojeda's text-messaged question is ambiguous, and it is within the district court's broad discretion to decline to depart based on its first-hand assessment of its meaning.

In sum, we conclude that the district court did not abuse its discretion by imposing the presumptive guidelines sentence.

**Affirmed.**